## COMMONWEALTH vs. CARL THOMAS HOFFER.

Suffolk. February 13, 1978. — June 9, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Evidence*, Other offense, On cross-examination, On redirect examination, Collateral matter, Record of past knowledge, Relevancy and materiality. *Practice, Criminal*, Mistrial, Directed verdict, Argument by prosecutor. *Witness*, Cross-examination, Redirect examination.

At a criminal trial, there was no error in admitting evidence tending to show that the defendant had a bad character and had committed other crimes where some of the evidence was relevant to the crime being tried and the probative value of the rest was not outweighed by any danger of prejudice. [372-373]

The defendant at a murder trial was not prejudiced by testimony tending to show that he had committed other crimes where the judge immediately struck the testimony and instructed the jury to disregard it. [372-373]

The judge at a criminal trial did not abuse his discretion in excluding a question by defense counsel on cross-examination of a witness where the substance of the question was thoroughly covered in several other questions. [373-374]

The admission of certain evidence at a criminal trial did not constitute prejudicial error where the evidence was merely cumulative. [374-375]

At a criminal trial, there was no error in the admission on redirect examination of a witness's prior consistent statements where portions of the prior statement were the subject of cross-examination. [375-376]

At a criminal trial, there was no error in permitting a witness to refer to statements she had made to the police and to her grand jury testimony in order to refresh her memory. [376]

Any weakness in the chain of custody of evidence at a criminal trial affected only the weight of the evidence, not its admissibility. [377]

There was no merit in a criminal defendant's contention that the judge erred in denying his motions for directed verdicts made on the ground that the testimony of the Commonwealth's chief witness was so inherently contradictory and had been so fully impeached that it was incredible as matter of law. [377]

A prosecutor's comments in his closing argument, which were based on the evidence and the fair inferences which could be drawn therefrom, were not improper. [377-380]

INDICTMENT found and returned in the Superior Court on August 3, 1976.

The case was tried before *Griffin, J.*

*Christopher Dye (Monroe L. Inker* with him) for the defendant.

*Jeremiah P. Sullivan, Jr.,* Assistant District Attorney (*James M. Lynch,* Special Assistant District Attorney, with him) for the Commonwealth.

ABRAMS, J. The defendant Carl Thomas Hoffer was indicted for murder in the first degree and armed robbery. After a trial by jury he was convicted of murder in the first degree and larceny.[1] We conclude that there was no prejudicial error at the trial and that exercise of our powers under G. L. c. 278, § 33E, is not warranted. We affirm the convictions and the judgment entered as a result of the conviction of murder in the first degree.

We summarize first the evidence presented at the trial by the main witness for the Commonwealth, Gale Dubuque Hoffer (Gale), the wife of the defendant. During the early morning hours of November 10, 1974, Hoffer and John O'Sullivan (O'Sullivan) arrived at Gale's home. At this time Gale was Hoffer's girl friend. He asked Gale to drive someone back to the Massachusetts Correctional Institution at Walpole. Hoffer, O'Sullivan, and Gale then picked up this person and drove to Walpole.

During the drive, the defendant removed a box from a duffel bag which he was carrying. Gale testified that Hoffer took a "rifle,"[2] ammunition, and surgical gloves from the box. There was some general conversation concerning the possibility of going target shooting; the defendant said that he wanted "to show [O'Sullivan] how to use the gun so that in case they got into trouble robbing the bank he would know what he was doing."

---

[1] The defendant did not object to the placing of the larceny conviction on file. Cf. *Commonwealth* v. *Delgado,* 367 Mass. 432, 437-438 (1975). This conviction thus is not before us. We note that none of the assignments of error involves the larceny conviction.

[2] The victim died from a "shotgun" wound. However, Gale testified that she was unfamiliar with the difference between a rifle and a shotgun.

When they arrived at Walpole, the prisoner directed Gale to drive around to the side away from the front entrance because he was returning late from furlough. Although Gale thought the man walked to the front entrance of the institution, she did not see him enter.

Hoffer then directed Gale to drive back by way of Turtle Pond. He stated that he wanted to show O'Sullivan how to use the gun. He told Gale to drop them off at a clearing in the Stony Brook Reservation, to drive around for twenty minutes, and to pick them up after that time. Hoffer took the duffel bag with him when he and O'Sullivan were dropped off.

When Gale returned, Hoffer was alone, and he no longer had the duffel bag. When Gale asked where O'Sullivan was, Hoffer said that he had to kill him because he thought O'Sullivan had been talking to the police about the bank robbery which they were planning. Hoffer pointed to the area below Gale's right ear and stated that that was where he had shot O'Sullivan. Hoffer also stated that he had taken everything out of O'Sullivan's pockets so that there wouldn't be any connection between himself and O'Sullivan. Among the items which Hoffer took was O'Sullivan's driver's license, which Hoffer said he planned to use.

During the period following the killing, the defendant proposed marriage to Gale on several occasions. He told her that she was "the only one that could hang" him and that she could not be forced to testify if they were married. After twice refusing to marry Hoffer because she was "scared," Gale married him on November 29, 1974.

O'Sullivan's body was found on November 10, 1974. His death was caused by a single gunshot wound in the neck beneath the right ear.

The police received a wage form which had been taken from the victim by the medical examiner. On the back of the form were the initials "C. T." and the telephone number of Hoffer's place of employment. The police called the number and talked with a person who identified himself as "C. T." The defendant told Gale that the police had called

at his workplace looking for "C. T." He said that he told them that he was "C. T." and that "C. T." stood for "Carl Thomas." He thus avoided telling them his surname, and when he was asked about O'Sullivan, he merely stated that he knew him.

The police also received a key to the victim's room from the medical examiner. In the room was the name and telephone number of a Cambridge police detective. This detective confirmed that O'Sullivan was a police informant.

1. *Evidence of Other Crimes and Bad Character.*

The defendant first argues that the trial judge erred when he admitted evidence tending to show that the defendant had committed crimes which were not charged in the indictment.

A. Gale Hoffer testified that the defendant did not have a driver's license and that he drove without one. In general, evidence of other crimes is not admissible to prove bad character. *Commonwealth* v. *Robinson*, 146 Mass. 571, 577 (1888). However, evidence which is otherwise relevant to the crime being tried is not rendered inadmissible merely because such evidence would tend to prove the commission of other crimes. *Commonwealth* v. *Eagan*, 357 Mass. 585, 589-590 (1970). *Commonwealth* v. *Stone*, 321 Mass. 471, 473-474 (1947). *Commonwealth* v. *Robinson, supra* at 577-579. The defendant was charged with armed robbery of O'Sullivan's wallet and also specifically of his driver's license. There was evidence that Hoffer intended to use the license of the victim. The facts that the defendant drove and that he did not possess a license were thus relevant to his motive for taking O'Sullivan's license. There was no error.

B. In her testimony, Gale also referred to the facts that the defendant had escaped from jail and that he had taken part in a bank robbery. The judge struck both these references and promptly instructed the jury to disregard them. However, the judge denied the defendant's motions for a mistrial on the basis of these statements. By striking the testimony and instructing the jury to disregard it, the judge did all that was necessary to cure any possible error from the ad-

mission of the statements. The judge was not required to declare a mistrial; such a determination is within the judge's discretion. *Commonwealth* v. *Early*, 349 Mass. 636, 637 (1965). *Commonwealth* v. *Bellino*, 320 Mass. 635, 645, cert. denied, 330 U.S. 832 (1947). No showing of an abuse of discretion has been made in the present case. In fact, it is unlikely that the defendant would have been prejudiced if the testimony had not been struck since testimony concerning the robbery and another escape from jail had earlier been admitted without objection. See *Commonwealth* v. *Hanley*, 337 Mass. 384, cert. denied, 358 U.S. 850 (1958).

C. During her testimony, Gale also stated that (1) while Hoffer was living with her, he was prone to unexplained absences; (2) Hoffer did not get along with her son; (3) she had avoided marrying the defendant because she was afraid of "a man who did things like that"; and (4) Hoffer associated with a convict knowing that he was overdue on furlough. The defendant contends that this evidence which, he argues, is indicative of bad character was improperly admitted.

The admission of such evidence is within the sound discretion of the judge. See *Commonwealth* v. *Clifford*, 374 Mass. 293, 299-300 (1978). No abuse of discretion appears in the present case. The probative value of these statements was not substantially outweighed by any danger of prejudice. If any prejudice would result from the admission of the first three statements, it would be trivial. The final testimony concerning bad character was inextricably intertwined with the description of events on the night of the killing and thus was highly relevant. There was no error.

2. *Scope of Cross-Examination.*

During his cross-examination of Gale, defense counsel asked, "Why didn't you say to her Honor and the jury yesterday, 'I don't remember any dates. I just remember certain events'?" This question was excluded. The defendant contends that its exclusion denied him the right of reasonable cross-examination.

The scope of cross-examination rests largely in the discretion of the judge. *Commonwealth* v. *Aronson*, 330 Mass. 453, 458-459 (1953). No abuse of this discretion has been shown. Even if there had been error in excluding this question, the defendant would not have been prejudiced because the substance of the question, that Gale could not remember specific dates, was thoroughly covered in several other questions. See *Commonwealth* v. *Baker*, 346 Mass. 107, 119-120 (1963).

Gale testified that she had seen the defendant burn O'Sullivan's driver's license, a picture of a woman holding O'Sullivan, and a picture of O'Sullivan holding a woman near a beach. A copy of the picture of a woman holding O'Sullivan was admitted as an exhibit. Margaret O'Sullivan, the victim's wife, identified the exhibit. During direct examination of Mrs. O'Sullivan, the prosecutor asked what other pictures were taken that day. The defendant excepted to the allowance of this question. Mrs. O'Sullivan testified that a photograph of O'Sullivan holding her was taken on that day and that it was missing from her photograph collection. The prosecutor asked Mrs. O'Sullivan what was in the background of the missing picture. Defense counsel excepted. Mrs. O'Sullivan testified that a beach was in the background. The defendant argues that he was unable to cross-examine Mrs. O'Sullivan effectively because some of the photographs referred to in her testimony were unavailable for his inspection.

The primary fact which the prosecution sought to prove at this point was the robbery of O'Sullivan's wallet. Evidence that Hoffer had pictures of O'Sullivan in his possession tended to confirm that he had stolen the wallet containing them. Evidence concerning the defendant's possession of the photograph admitted as an exhibit and Mrs. O'Sullivan's identification of that photograph had already been presented. Thus, even if the admission of evidence concerning the missing photograph were error, this evidence was merely cumulative and its admission does not

constitute prejudicial error. See *Commonwealth* v. *Rawlins*, 352 Mass. 293, 295 (1967).

3. *Scope of Redirect.*

During cross-examination of Gale, defense counsel asked questions concerning specific portions of her November, 1975, statement to the police, her July, 1976, statement, and her August, 1976, grand jury testimony. The general purpose of this questioning was to demonstrate that Gale had lied on several occasions in the past. During redirect, the prosecutor explored all three statements in detail in an attempt to explain the circumstances of the lies and to demonstrate that the statements were generally consistent with each other and with Gale's direct testimony. The defendant argues that this testimony was improperly admitted because it exceeded the scope of cross-examination and because there was no claim of bias or recent contrivance which would warrant the admission of prior consistent statements.

A. The purpose of redirect examination is to explain or rebut adverse testimony or inferences developed during cross-examination. *Commonwealth* v. *Smith*, 329 Mass. 477, 479-481 (1952). The subject matter of the statements and the grand jury testimony was opened up on cross-examination, and therefore an exploration of them on redirect was clearly within the scope of cross-examination.

Further, even if the redirect examination had exceeded the scope of cross-examination, the judge has discretion to allow or limit redirect concerning matters not touched on in cross-examination. *Commonwealth* v. *Cadwell*, 374 Mass. 308, 314 (1978). *Commonwealth* v. *Smith, supra* at 479. See *Commonwealth* v. *Binkiewicz*, 342 Mass. 740, 758 (1961). There was no abuse of discretion.

B. In general, prior consistent statements may be admitted to rehabilitate a witness only when a claim of bias or recent contrivance is made. *Wilson* v. *Jeffrey*, 328 Mass. 192, 194 (1951). *Commonwealth* v. *Tucker*, 189 Mass. 457, 479-485 (1905). No such claim was made in the present case. However, the prior consistent statements were contained in

the statements to the police and the grand jury testimony, portions of which were the subject of cross-examination. The introduction of parts of statements on cross-examination generally allows detailed examination of the entire statements on redirect. *Commonwealth* v. *Taylor,* 327 Mass. 641, 648-649 (1951). Where, as here, portions of prior statements are the subject of cross-examination and the prior consistent testimony sought to be introduced is itself contained in the prior statements and places the cross-examination concerning the prior statements in context, it is not error to admit the consistent testimony. See *Commonwealth* v. *Walker,* 370 Mass. 548, 570-571, cert. denied, 429 U.S. 943 (1976).

4. *Present Recollection Refreshed.*

During the course of her testimony on redirect, Gale repeatedly referred to the statements she had made to the police and to her grand jury testimony in order to refresh her memory. The defendant argues that the allowance of this testimony was improper because Gale had no independent recollection of the subject matter of her testimony.

A witness may use a writing to refresh a failing memory. However, the testimony which the witness then gives must be the product of present recollection. See *Commonwealth* v. *Rogers,* 351 Mass. 522, 534, cert. denied, 389 U.S. 991 (1967); *Fisher* v. *Swartz,* 333 Mass. 265, 267 (1955); *Commonwealth* v. *Pike,* 324 Mass. 335, 339-340 (1949). In the present case, the judge was aware of the possibility that Gale might not presently be able to recall her past conversations. Both the judge and the prosecutor scrupulously questioned Gale concerning her present ability to remember the statements. When her memory was not sufficiently refreshed, Gale so stated. The transcript thus furnishes no basis for concluding that when Gale did answer the prosecutor's questions, she was not testifying from present memory. There was no error. See *Commonwealth* v. *Pike, supra* at 339-340. See also *United States* v. *Riccardi,* 174 F.2d 883 (3d Cir. 1949).

5. *Chain of Custody.*

Dr. Katsas, a forensic pathologist, testified that he gave Officers Davis and Keenan certain items, including miscellaneous papers, which were found in the clothing of O'Sullivan. Officer Davis testified that he received from Dr. Katsas a wage form with the telephone number of the defendant's place of employment, and the initials "C. T." written on it. This paper was introduced in evidence. The defendant contends that the admission of this form was error because the chain of custody linking the paper to O'Sullivan was incomplete since Dr. Katsas did not testify that he found this specific form on the body of the victim. There was no error. Any weaknesses which might exist in the chain of custody affect only the weight of the evidence, not its admissibility. *Commonwealth* v. *Baptiste*, 372 Mass. 700, 708-709 (1977). *Commonwealth* v. *White*, 353 Mass. 409, 419-420 (1967), cert. denied, 391 U.S. 968 (1968). *Commonwealth* v. *Vanetzian*, 350 Mass. 491, 496 (1966).

6. *Directed Verdicts.*

The defendant contends that the judge erred in denying his motions for directed verdicts of not guilty on the murder and robbery indictments. The defendant does not argue that insufficient evidence existed to warrant submitting the charges to the jury; rather, he contends that Gale's testimony, which was the heart of the prosecution's case, was so inherently contradictory and had been so fully impeached that it was incredible as matter of law. This argument is without merit. Credibility is a question for the jury to decide. Once sufficient evidence is presented to warrant submission of the charges to the jury, it is for the jury alone to determine what weight will be accorded to the evidence. *Commonwealth* v. *Amazeen*, ante 73, 79-81 (1978). *Commonwealth* v. *McCauley*, 355 Mass. 554, 560 (1969). There was no error.

7. *Prosecutor's Closing Argument.*

The defendant next argues that three of the prosecutor's remarks in his closing argument warrant a new trial. We find no reversible error.

Gale had testified that on the night of the killing she had dropped off a man on furlough at Walpole. The supervising correctional officer at Walpole testified that if a prisoner had returned from furlough that night an entry in the institution's records would have been made and that there was no such entry. In his closing argument the prosecutor suggested that the prisoner might have bribed a guard not to record his late return or that the guard in charge had neglected to complete the paper work involved with recording returns. The judge instructed the prosecutor not to continue with this line of argument.

In closing argument, counsel may argue the evidence and the fair inferences which can be drawn from the evidence. *Commonwealth* v. *Burke*, 373 Mass. 569, 574-575 (1977). *Commonwealth* v. *Nordstrom*, 364 Mass. 310, 315 (1973). *Commonwealth* v. *Pettie*, 363 Mass. 836, 840 (1973). *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 27-28 (1923). In the present case there was evidence that a prisoner had returned to Walpole, that records were kept when prisoners returned, and that there was no record of such a return on the night in question. One inference which could be drawn from these facts is that the records for this night were not properly kept. Through his examples in his closing argument, the prosecutor attempted to suggest this inference. See *Commonwealth* v. *Cheek*, 374 Mass. 613, 618-619 (1978); *Commonwealth* v. *Nordstrom, supra* at 314-315. The prosecutor in no way implied that he had personal knowledge of the facts. See *Commonwealth* v. *Cheek, supra* at 618; *Commonwealth* v. *Nordstrom, supra* at 313-315. Cf. *Commonwealth* v. *Earltop*, 372 Mass. 199, 203-204 (1977). This argument was not improper.

Gale testified that Hoffer kept a number of weapons at the bar where a friend, Michael Aronson, worked, and that Aronson became uneasy about storing the guns as the investigation concerning Hoffer proceeded. Gale also testified that she heard the defendant tell Aronson that he had killed O'Sullivan because O'Sullivan was reporting to the police.

A police officer who interviewed Aronson testified that Aronson denied that Hoffer had made such an admission.

In an attempt to discredit Gale's testimony, the defense counsel twice mentioned in his argument that Aronson had denied that Hoffer had told him of the killing. In his closing argument the prosecutor stated, "Don't you think [the fact that Aronson was an associate of Hoffer] would be a reason for Aronson not to talk to the police? Don't you think that Aronson knows what this defendant would do to a friend who talks to the police?" The judge instructed the prosecutor not to argue further along this line.

There was evidence that Hoffer told Aronson of the killing and the reason for it. Further, the evidence indicated that Aronson knew Hoffer had guns, that Aronson was a friend of Hoffer, and that Aronson denied the conversation with Hoffer. One inference which could be drawn from this set of facts is that Aronson was not telling the truth either because of fear or because of friendship. This inference was the one which the prosecutor suggested to the jury. Again, there was no indication that the prosecutor had personal knowledge of the facts. Thus, this argument also was not improper. See *Commonwealth* v. *Cheek, supra* at 618-619; *Commonwealth* v. *Nordstrom, supra* at 313-315.

Finally, the prosecutor stated in his closing argument: "Consider the right of John O'Sullivan to live, a right that we hold most dearly. Consider the right that his family had to enjoy his association." The judge, on objection by defense counsel, instructed the prosecutor not to continue this line of argument. Assuming that the prosecutor's remark was an improper attempt to invoke sympathy, *Commonwealth* v. *Burnett*, 371 Mass. 13, 18-19 (1976), such a statement standing alone does not constitute reversible error. This is especially true where, as here, the argument is immediately terminated by the judge. Moreover, the judge charged the jury that they must decide the case "without fear and without bias, without prejudice, without sympathy . . . and

in accordance with the law." See *Commonwealth* v. *Burnett, supra* at 18-19.[3]

8. *General Laws c. 278, § 33E.*

After review of the entire transcript and record, we conclude that this case presents no occasion for the exercise of our authority under G. L. c. 278, § 33E, to grant a new trial or to reduce the conviction of murder in the first degree.

*Judgment affirmed.*

---

[3] The prosecutor stated before the judge and before this court that his argument was directed toward suggesting to the jury that the victim's family were also "looking for justice." The prosecutor in his argument went on to state that, "the rights of the defendant in this case are important. You will have to consider those. You will be instructed on those rights by the judge." Thereafter, in the charge, the judge clearly told the jury that they could not consider the remarks of counsel as evidence.