COMMONWEALTH vs. THEODORE NEAL WATKINS.

Middlesex. November 7, 1978. — February 22, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Practice, Criminal*, Instructions to jury, Capital case. *Due Process of Law*, Accomplice testimony. *Witness*, Accomplice. *Evidence*, Corroborative evidence.

At a criminal trial there was no error in the judge's charge concerning reasonable doubt. [387-388]
At a criminal trial the judge did not err in failing to instruct the jury that the testimony of an accomplice should be scrutinized with care where the accomplice had not been granted immunity from prosecution and where her testimony was amply corroborated by other evidence. [388-391]

INDICTMENTS found and returned in the Superior Court on November 9, 1976.

The cases were tried before *Nelson, J.*

*Willie J. Davis* for the defendant.

*Susan C. Mormino*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. Pursuant to G. L. c. 278, §§ 33A-33G, the defendant Theodore Neal Watkins appeals his convictions for the murder in the first degree and the kidnapping of Eddie Keen. Watkins argues no assignments of error.[1] Instead, he claims that we should grant relief under G. L. c. 278, § 33E, for either of two reasons: (1) that the trial judge erroneously instructed the jury concerning the concept of "reasonable doubt," or (2) that the judge failed to charge the jury that the testimony of an

[1] Assignments of error not briefed are deemed waived. *Commonwealth* v. *Campbell*, 375 Mass. 308, 309 n.1 (1978). *Commonwealth* v. *Kleciak*, 350 Mass. 679, 681 (1966).

accomplice must be scrutinized with care. We conclude
that there is no error and that there is no reason to
exercise our powers under G. L. c. 278, § 33E.

We summarize the facts. Shortly after 6 P.M. on Novem-
ber 17, 1975, Theresa Nelson and the defendant's brother
Larry Watkins (L. Watkins) were walking along Dudley
Street in the Roxbury section of Boston.[2] There they en-
countered Keen, who stopped his car and asked Nelson if
she wanted a ride. Nelson said she did and she entered
the front seat of Keen's car. L. Watkins then came for-
ward, entered the car and sat in the back seat.

About five minutes later, L. Watkins pulled out a gun
and ordered Keen to stop the car. Keen did so, and L.
Watkins asked whether he had any money. When Keen
said that he had no money, L. Watkins told Nelson to
"frisk" Keen. She did so, and removed his wallet.

L. Watkins and Keen then got out of the car. L. Wat-
kins opened the trunk of the car and ordered Keen to get
inside. After Keen entered the trunk, L. Watkins closed
the lid.

L. Watkins and Nelson then drove the car to the de-
fendant's home. After Nelson told the defendant that his
brother was outside and had a man in the trunk of the
car, the defendant came outside and got into the car with
Nelson and his brother.

As the group drove through Roxbury, L. Watkins and
the defendant decided to kill Keen. They drove the car to
Lakeview Avenue in Newton. There, they stopped the
car, and the two brothers went to the rear of the car and
opened the trunk.

After the trunk was opened, Keen was shot once in the
head.[3] Theodore Watkins and L. Watkins then threw

[2] Nelson was the Commonwealth's main witness. She had already
testified against L. Watkins. See Commonwealth v. Watkins, 375
Mass. 472 (1978).

[3] Nelson testified that she did not see who actually shot Keen. How-
ever, she also testified that the defendant had said that he would do
it, and that she had heard L. Watkins slide the gun across the front
seat to the defendant.

Keen's body into some leaves near the side of the road. The men returned to the car and drove away. The defendant then fled from Massachusetts.

The jury found the defendant guilty of kidnapping and murder in the first degree.[4] The judge sentenced him to life imprisonment for murder and to a concurrent term of from five to ten years' imprisonment for kidnapping.

1. *The Charge to the Jury Concerning Reasonable Doubt.*

The defendant asserts that the judge erroneously defined "reasonable doubt" in his charge to the jury.[5] The

---

[4] The judge directed a verdict for the defendant on an indictment which charged him with armed robbery.

[5] The judge's charge to the jury concerning reasonable doubt was as follows: "Now to a third proposition, and that is that the burden that the Commonwealth has is to prove to you, each and every essential element of the crime alleged beyond a reasonable doubt. Now 'beyond a reasonable doubt' is a term that I think you can understand even without much definition. Let me suggest to you then that the law says that the guilt of the defendant must be proved to that degree of certainty that leaves you with an abiding conviction of the truth of the charge. The prosecution must put forth to you such credible evidence as to prove the guilt and every essential element thereof to a degree of proof beyond a reasonable doubt.

"Now that does not mean proof beyond all doubt or beyond a whimsical doubt, nor does it mean proof to an absolute or mathematical certainty. If that were so, there could be no conviction because what is available to prove guilty [*sic*] could never permit that possibility. You weren't there, I wasn't there, the lawyers weren't there, so we never saw it with our own eyes and we could never prove to an absolute certainty that anyone did anything.

"Reasonable doubt means that doubt that remains in the minds of reasonable men and women sitting as jurors who are seeking the truth. A fact is proved beyond a reasonable doubt when it is proved to a degree of certainty that satisfies your judgment, satisfies your conscience, that such a fact is so, and those facts are sufficient to establish guilt.

"The question you ask yourselves is: Are you morally certain, are you reasonably satisfied by the evidence that the defendant committed such acts as to amount to the crime alleged, or the crimes alleged? If when all is said and done there remains in your mind a reasonable doubt of the existence of any fact which is essential to the guilt of the

defendant maintains that the judge's definition of reasonable doubt "permitted the jury to convict or acquit [him] on the basis of information incapable of verification."

To determine whether a definition of reasonable doubt accurately conveys the meaning of the term, it is necessary to consider the charge as a whole. See, e.g., *Commonwealth* v. *Grace*, 376 Mass. 499, 501 (1978); *Commonwealth* v. *Bjorkman*, 364 Mass. 297, 308 (1973); *Commonwealth* v. *Pettie*, 363 Mass. 836, 843 (1973). Here, the charge, taken as a whole, reveals no error.

In his charge to the jury concerning reasonable doubt, the judge's language cannot be construed "as in any way diluting the Commonwealth's burden of proving the case beyond a reasonable doubt." *Commonwealth* v. *Gilday*, 367 Mass. 474, 498 (1975). The charge properly emphasized the moral certainty, as opposed to a mathematical certainty, which we have consistently held to be a proper definition of the Commonwealth's burden.[6] See, e.g., *id.* at 497-498; *Commonwealth* v. *Bjorkman, supra* at 307-308 & n.8; *Commonwealth* v. *Madeiros*, 255 Mass. 304, 307-308 (1926); *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850).

2. *The Failure to Charge the Jury Concerning Accomplice Testimony.*

The defendant argues that the judge erred in failing to instruct the jury that the testimony of Nelson should be

---

defendant, the defendant is entitled to the benefit of that doubt or that uncertainty and your verdict must reflect that doubt. If, however, you are satisfied that the Commonwealth has proved each and every essential element, then your verdict must be 'guilty.' "

[6] The defendant's reliance on *Dunn* v. *Perrin*, 570 F.2d 21 (1st Cir.), cert. denied, 437 U.S. 910 (1978), is misplaced. Unlike the case before us, in *Dunn* not only did the charge given by the New Hampshire judge contain references to decisions in the jurors' daily lives, see *Commonwealth* v. *Ferreira*, 373 Mass. 116, 129-130 (1977), but the charge also confused the definition of reasonable doubt itself. See *Dunn* v. *Perrin, supra* at 23-24 & n.3. The charge in *Dunn* was thus "the exact inverse of what it should have been." *Id.* at 24. Compare *United States* v. *Magnano*, 543 F.2d 431, 436 (2d Cir. 1976), cert. denied, 429 U.S. 1091 (1977).

scrutinized with care because Nelson was an accomplice to the crime.[7] He claims that Nelson's testimony was uncorroborated and that his conviction on the uncorroborated testimony of an accomplice, in the absence of a cautionary instruction by the judge, denied him due process of law.

The defendant recognizes, however, that "[i]t has long been the general rule in this Commonwealth that a defendant may be convicted on the uncorroborated testimony of an accomplice,"[8] and the judge is not required to give a cautionary instruction to the jury. *Commonwealth* v. *DeBrosky*, 363 Mass. 718, 729 (1973). See, e.g., *Commonwealth* v. *Flynn*, 362 Mass. 455, 467 (1972); *Commonwealth* v. *French*, 357 Mass. 356, 397 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts*, 408 U.S. 936 (1972); *Commonwealth* v. *Taber*, 350 Mass. 186, 187 (1966); *Commonwealth* v. *Leger*, 264 Mass. 217, 220 (1928); *Commonwealth* v. *Phelps*, 192 Mass. 591, 595 (1906).

The defendant, however, argues that the failure of the judge to charge the jury that they should carefully scrutinize accomplice testimony "is now [a question] of constitutional proportion," and "was a violation of the defendant's right to due process of law." We disagree.

In *Caminetti* v. *United States*, 242 U.S. 470, 495 (1917), the Supreme Court rejected the proposition that the testimony of an accomplice must be corroborated in order to support a criminal conviction. See *United States* v.

---

[7] We assume, without deciding, that Nelson may be viewed as an accomplice to both murder and kidnapping in this case. The Commonwealth disputes the factual assumption that Nelson is an accomplice. Ordinarily a factual dispute as to whether a witness is an accomplice is a question for the jury. See *Commonwealth* v. *Elliot*, 110 Mass. 104, 107 (1872).

[8] This rule was legislatively altered by St. 1970, c. 408, in the case of an accomplice to whom immunity has been granted. See G. L. c. 233, § 20I. Since Nelson was not granted immunity from prosecution, the requirement of corroboration does not apply. See *Commonwealth* v. *Stewart*, 375 Mass. 380, 386 (1978).

*DeLarosa*, 450 F.2d 1057, 1060 (3d Cir. 1971), cert. denied sub nom. *Baskin* v. *United States*, 405 U.S. 927 (1972); *Garner* v. *Oklahoma*, 430 F. Supp. 692, 696 (W.D. Okla. 1975), aff'd sub nom. *Bromley* v. *Crisp*, 561 F.2d 1351, 1358 (10th Cir. 1977), cert. denied, 435 U.S. 908 (1978). Similarly, a jury instruction that accomplice testimony must be carefully scrutinized is not constitutionally required. *Grieco* v. *Meachum*, 533 F.2d 713, 721 (1st Cir.), cert. denied sub nom. *Cassesso* v. *Meachum*, 429 U.S. 858 (1976). See *United States* v. *Wright*, 573 F.2d 681, 685 (1st Cir.), cert. denied, 436 U.S. 949 (1978); *United States* v. *House*, 471 F.2d 886, 888 (1st Cir. 1973).

The defendant also asks that we reconsider the Massachusetts rule concerning jury instructions on uncorroborated accomplice testimony as a matter of State law. Assuming Nelson to be an accomplice, her testimony was corroborated in a variety of ways. Hence there is no occasion for us to reconsider our rule.

Nelson testified that Keen was killed by a single shot. She described the area as "way out in a white neighborhood," with a hill and traffic on one side of the street and trees on the other. She testified the shot was fired between 7 P.M. and 8 P.M. on November 17.

Keen's body was found in an area of Newton matching Nelson's description. A resident of that area of Newton heard a single shot fired at approximately 7:45 P.M. on November 17, and then heard a car drive away.

The medical examiner found the cause of death to be a single gunshot wound. He further testified that in his opinion Keen could have lived for up to thirty minutes after he was shot. Blood was found in the trunk of the car as well as on the leaves where Keen's body was found. This evidence tends to corroborate Nelson's testimony that the killing occurred in Newton and that Keen was still alive when his body was thrown into the leaves.[9]

---

[9] To the extent that the defendant argues, without record support, that the killing occurred in Roxbury before he joined his brother, the record supports and corroborates Nelson's account of what happened.

Nelson testified that on the night of the killing Keen was wearing a jacket. Keen was seen wearing a corduroy jacket when he left work and was still wearing the corduroy jacket when his body was found. Moreover, Nelson's testimony that Keen was in the trunk of the car was corroborated by finding one of Keen's shoes in the trunk of the car.

Prior to the defendant's trial, Nelson had been convicted and sentenced for armed robbery and kidnapping.[10] She was not, therefore, an immunized witness. Even if we were to assume she was an immunized witness, the corroboration necessary to support the testimony of an immunized accomplice may relate to the commission of the crime, and need not directly connect the defendant to the crime. See *Commonwealth* v. *Turner,* 371 Mass. 803, 812 (1977); *Commonwealth* v. *DeBrosky,* 363 Mass. 718, 730 (1973); G. L. c. 233, § 20I. See generally, 7 J. Wigmore, Evidence § 2059, at 424 (Chadbourn rev. 1978) (The thrust of the immunity statute is that "[t]he important thing is, not *how* our trust is restored, but whether it *is* restored at all" [emphasis in original]). In our view, Nelson's testimony was amply corroborated.

3. *Review Under G. L. c. 278, § 33E.*

Pursuant to G. L. c. 278, § 33E, we have reviewed the entire case for consideration of the law and the evidence.[11] We find no reason to order a new trial or to direct a verdict of a lesser degree of guilt.

*Judgments affirmed.*

[10] Nelson had been sentenced to the Massachusetts Correctional Institution at Framingham for three to five years on the armed robbery conviction. She had been sentenced to a six to ten year suspended sentence on the kidnapping conviction to commence on and after her completion of her armed robbery sentence.

[11] The errors assigned by the defendant but not argued are considered waived. In any event, they are without merit. As to those assignments of error concerning the denial of the defendant's motions for directed verdicts, there was sufficient evidence presented to warrant submission of the charges to the jury, and it was for the jury to decide the weight to be accorded to the evidence. See *Commonwealth* v. *Hoffer,* 375 Mass. 369, 377 (1978); *Commonwealth* v. *Amazeen,* 375 Mass.

73, 81 (1978). As to the assignments of error concerning the judge's decision to allow Nelson to explain why she was telling the truth at trial and why she had lied to police, there was no error. See *Commonwealth* v. *Caine,* 366 Mass. 366, 368-369 (1974); *Commonwealth* v. *Smith,* 329 Mass. 477, 479-481 (1952). See also *Commonwealth* v. *Hoffer, supra* at 375; *Commonwealth* v. *Ferreira,* 373 Mass. 116, 130-131 (1977); *Commonwealth* v. *Fatalo,* 345 Mass. 85, 86-87 (1962).