COMMONWEALTH *vs*. ALLAN B. HOPPIN.

Middlesex. April 7, 1982. — August 2, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Criminal,* Argument by prosecutor, Conduct of prosecutor, Mistrial, Trial of indictments together.

A prosecutor's misconduct during closing argument at the trial of indictments for rape and other serious crimes, in displaying to the jury a piece of rawhide not part of the evidence and which fitted the victim's description of a "leather thong" with which she had been bound, was so prejudicial as to require allowance of the defendant's motion for a mistrial. [28-32]
Discussion of the circumstances in which a judge should generally exercise his discretion in favor of separate trials of a defendant charged with multiple criminal offenses. [32-34]

INDICTMENTS found and returned in the Superior Court Department on September 11, 1979.

The cases were tried before *Sullivan*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*William J. Leahy* for the defendant.

*Robert M. Raciti*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant appeals from convictions of rape, assault and battery by means of a dangerous weapon, kidnapping, and receipt of stolen goods.[1] His principal contention is that the prosecutor committed reversible error when he employed a length of rawhide, not in evidence and without connection to the case, as a dramatic prop during his closing argument to the jury. The defend-

---

[1] The defendant was sentenced on each of these charges. The four remaining indictments were placed on file.

ant also argues that the judge erred in denying his motion to
sever. The Appeals Court affirmed the convictions. 13
Mass. App. Ct. 36 (1982). We granted the defendant's ap-
plication for further appellate review. We conclude that,
in the circumstances, the display of rawhide was a serious
prosecutorial error and requires reversal of the convictions.[2]

The defendant was indicted on eight charges: rape, as-
sault and battery by means of a dangerous weapon, kidnap-
ping, commission of an unnatural act, illegal possession of a
firearm, possession of ammunition, possession of mari-
huana, and receipt of stolen goods. The first four of these
charges arose from an incident on July 4, 1979, involving
the defendant and a female acquaintance (the victim). The
latter four charges relate to items seized from the
defendant's trailer on July 24, 1979, by police investigating
the July 4 incident. The defendant's motion for separate
trials of these two groups of indictments was denied, and
the eight indictments were tried together before a jury. The
jury returned verdicts of guilty on each of the indictments.

The principal witness for the Commonwealth was the
victim. We summarize her testimony. Prior to July 4,
1979, she and the defendant had been friends, but had not
been lovers. She had frequently complained to the defend-
ant of her former boyfriend "Jake," who had abused and
defrauded her. She wished Jake dead, and to her surprise,
the defendant offered to carry out her wish. The victim
stated that she did not accept this offer.

On July 4, the defendant contacted the victim at her
place of work, and asked to talk. As a result the two met
that evening and drove to the trailer in which the defendant
lived. There, the defendant told the victim that he had shot
and killed her former boyfriend and two companions, and
showed her a pouch that he implied contained empty shells.
On previous occasions, she had seen in the defendant's
possession a handgun, which he had described as "hot."

---

[2] The assistant district attorney who represents the Commonwealth in
this appeal was not the prosecutor at the trial.

When the defendant told her of the murders, she was "kind of shocked," but uncertain whether he was telling the truth. On cross-examination, she testified that she had since learned that her former boyfriend was still alive, but stated that she had not known this on July 4, the night of the conversation and alleged rape.

According to the victim, the defendant, after describing the murders, stated that he would "have" her in payment for his services. After some discussion, in which the victim refused to have sexual intercourse with the defendant, he took her forcibly to the rear of the trailer. He tied her hands with a "leather thong," removed her clothes, struck her, held a knife or sharp object to her throat and forced her to perform sexual acts.

Eventually, the defendant untied the victim, placed a blanket over her, and fell asleep. The victim "lost consciousness or awareness" for some time, then came to, dressed, and left the trailer in search of a telephone. A police officer stopped to ask if she was all right, and she responded that she was. She told a second police officer, who gave her a ride to a telephone, that she had been in a fight with a friend. She explained at trial that she had told this story in order to avoid questions.

The victim then telephoned an acquaintance, and told him that she had been raped. The next day, July 5, she consulted a counseling service and a doctor. On July 24, she contacted the police.

The acquaintance whom the victim had telephoned on the night of the incident testified that the victim had told him of the rape, and that she had appeared bruised and beaten. Another friend and a social worker, both of whom had spoken with the victim on July 5, gave similar testimony. A doctor who had treated the victim on July 5 recalled bruises, cuts and marks on her wrists. He stated that the victim had told him that she had been tied, beaten and raped, and that the marks on her wrists were "rope marks." In the doctor's opinion, her injuries were consistent with this account.

Two police officers testified that on July 24, acting on information from the victim, they went to the defendant's

trailer to arrest him. Although they had no warrant, the
defendant cooperated with them and invited them into the
trailer. There they found and seized a knife, a gun, ammu-
nition, and marihuana. Apparently, no leather strap was
found. The victim identified the gun as the weapon the de-
fendant had referred to as "hot." An employee of a sporting
goods store testified that the gun had been stolen from his
store in 1978.

The sole defense witness was the owner of a storage com-
pany, who had formerly employed both the victim and the
defendant. He testified that he had overheard the victim
asking the defendant to "blow away" her former boyfriend.

1. *The Prosecutor's Closing Argument.*

At the close of the evidence, the judge held a bench con-
ference to consider the proper scope of closing arguments.
The prosecutor did not mention the use of demonstrative
props, and the judge foresaw no problems in the Common-
wealth's proposed arguments. See *Commonwealth* v. *Earl-
top*, 372 Mass. 199, 206-207 (1977) (Hennessey, C.J., con-
curring). Before the jury, the defendant contended that the
victim had wished the defendant to murder her former boy-
friend; that she had learned that his claim of murder was
false; that this had angered her and provoked a fight; and
that she later had fabricated her account of rape. The pros-
ecution argued that the defendant had related the story of
murder in order to win the victim's sexual favor; that this
ploy had failed; and that the defendant had then resorted to
force to accomplish his objective.

During his closing argument, the prosecutor employed
what the Commonwealth now refers to as "oratorical
prop[s]." Most important, he wrapped around his hand a
length of rawhide, one-quarter inch thick. Neither this
rawhide nor any like it had been introduced in evidence.
After holding the rawhide for thirteen minutes, the prose-
cutor threw it down on his desk. He later picked it up again,
then returned it to his desk where it remained, in the view
of the jury, for the rest of his closing argument.[3]

---

[3] This description of the rawhide and the prosecutor's conduct was given
by defense counsel to the judge in the presence of the prosecutor. The prose-

Early in the prosecutor's argument, the defendant attempted to object, but the judge, who had not seen the rawhide from his position behind the bench, overruled the objection.[4]  At the close of the arguments, and after the jury had been excused, the defendant explained the problem to the judge and moved for a mistrial.  The judge took the motion under advisement.  The following day, the judge denied the motion, and attempted instead to counteract the prosecutor's error through curative instructions.  He told the jury that legitimate argument was limited to the fair inferences from evidence introduced at trial, and instructed them specifically that the rawhide displayed by the prosecutor was not evidence and must be disregarded.[5]

cutor admitted having had the length of rawhide, and made no objection to defense counsel's description of his actions.

The prosecutor also displayed a small pillow, which, he explained to the jury, was used by his daughter to hide teeth for the tooth fairy.  The prosecutor used the pillow to dramatize his analogy of the defendant's theory of the case to a fairy tale.

[4] The defendant objected in general terms and requested a conference at side bar.  The judge denied the request for a conference.  At the close of the prosecutor's argument, the defendant again requested a conference at side bar, but the judge postponed the conference until after he had excused the jury.  As a result, the defendant did not state the nature of the problem until after the jury were excused for the day.  Nevertheless, in light of his earlier attempts to explain, and his motion for a mistrial at the earliest opportunity, we believe that he adequately preserved his appellate rights.  Cf. *Commonwealth* v. *Burke*, 373 Mass. 569, 575 (1977).

[5] In the relevant portion of his instructions, the judge stated, "You remember at the beginning of the summation argument I told you that the trial proper had been completed because you had received at that point in time, when the parties rested, all of the information you were ever going to receive.  But in an adversary system, we allow counsel to argue the inferences most favorable to them to assist you and to convince you, quite frankly, of their side.

"Now, it is an adversary system, and from time to time — there may be and there is a limitation on counsel to keep himself in this case now within the evidence and the fair inferences from the evidence.

"Briefly, it was brought to my attention that the prosecutor in this case during the course of a portion of his argument had with him in his hands a rope of some kind, visibly, apparently made out of leather.  Now, that was not in evidence, and I instruct you to disregard the fact that he had it in his hand.  It would not be proper for you not to do so.  What he is al-

The prosecutor's display of rawhide was clearly improper. Closing argument must be confined to the evidence and the fair inferences from the evidence. *Commonwealth* v. *Hoffer*, 375 Mass. 369, 378 (1978). *Commonwealth* v. *Earltop*, 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring). Counsel may not refer to or suggest their knowledge of matters not in evidence. E.g., *Commonwealth* v. *Burke*, 373 Mass. 569, 574-577 (1977); *Commonwealth* v. *Borodine*, 371 Mass. 1, 10 (1976), cert. denied, 429 U.S. 1049 (1977). Similarly, counsel may not display objects that have not been admitted in evidence. See *State* v. *Scarlett*, 118 N.H. 904, 905-906 (1978); *Commonwealth* v. *Glover*, 446 Pa. 492, 499-502 (1972); ABA Standards for Criminal Justice, The Prosecution Function §§ 3-5.6, 3-5.9 (2d ed. 1980).

In the circumstances, the prosecutor's display was highly prejudicial to the defendant, and compels us to reverse his convictions. The length of rawhide fitted the victim's description of a "leather thong," with which the defendant had bound her wrists to facilitate rape. The jury, observing the rawhide throughout the prosecutor's summation, could easily have inferred that it was in fact the same leather thong. Two references by the prosecutor, in the course of his argument, to the victim's having been tied with "rawhide," made the connection even more likely.

Viewed in context, the rawhide was apt to stir the jury's emotions. The victim had described the leather thong as an implement of rape, and a source of pain. Thus the rawhide

---

lowed to do is to argue the evidence and the fair inferences. He can talk about the evidence with respect to what the witness said happened. He can talk [about] what the doctor observed and what other people observed and what the doctor's observations were on the wrists, and so forth and so on. But he may not bring before you matters which are not in evidence, and that was inappropriate and it should have no influence on you and should be disregarded by you, and I know that as fair and impartial jurors you will be able to do so, because you must decide the case based solely on the evidence that you have heard."

Later in his instructions, the judge stated, "I feel comfortable that you will be able to disregard any misstatements or potential misstatements made in either counsel's summation argument."

evoked an image of sexual violence. Moreover, a leather thong, if one had been found, would have added much to the Commonwealth's case. The outcome of the trial turned primarily on the credibility of the victim. The discovery of a leather strap, matching her description, would have corroborated her account of the incident and discredited the defendant's theory of the case. See *Commonwealth* v. *Redmond*, 370 Mass. 591, 597 (1976).

The Commonwealth argues that the prejudicial impact of the rawhide was alleviated by the judge's curative instructions. Impropriety in closing argument can often be counteracted by instructions cautioning the jury to disregard the offending remarks, and to consider only the evidence properly introduced at trial. *Commonwealth* v. *Redmond*, *supra* at 596. See, e.g., *Commonwealth* v. *Hoffer*, 375 Mass. 369, 377-380 (1978); *Commonwealth* v. *Borodine*, 371 Mass. 1, 10-12 (1976). Here, however, the inference that the leather thong had been discovered was strong and supported the Commonwealth's position on issues central to the case. The rawhide was on view throughout the prosecutor's argument, which lasted more than one-half hour. Further, because the judge did not become aware of the impropriety until after the jury had been excused for the day, the jury were left overnight with the impression of the rawhide before hearing curative instructions.[6] Cf. *Commonwealth* v. *Hoffer*, *supra* at 379 (immediate termination of improper line of argument). In these circumstances, we cannot assume that the judge's instructions, careful as they were, sufficiently deflected the impact of the prosecutor's error.[7] We note that the error could easily have been avoid-

---

[6] As noted earlier (see note 4, *supra*), the defendant made reasonably diligent efforts to bring the problem to the judge's attention early in the prosecutor's argument, and so cannot be held responsible for the delay.

[7] The problem confronting the judge is obvious. "Prejudicial excesses in argument offered on behalf of the Commonwealth constitute *prosecutorial error*, not judicial error. After days or weeks of trial the trial judge is placed in a dilemma. A mistrial may be declared only at great public expense. The judge's usual recourse is to curative instructions; the appellate

ed if the prosecutor had discussed his plan to employ dramatic props with the judge during the pre-argument conference.

2. *Severance.*

The defendant moved to sever trial of the possessory charges arising from the search of his trailer on July 24,[8] from trial of the charges of rape and related offenses arising from the incident of July 4.[9]  He argues that the judge's denial of his motion, particularly as it concerned the indictment for receipt of stolen goods, was an error calling for reversal of his convictions.  We need not consider the question of severance in this light, because we have decided to reverse on the ground of impropriety in closing argument.  Nevertheless, we append comments on severance because the problem is likely to arise on remand.

As a general rule, joinder is a matter to be resolved by the judge in his discretion.  *Commonwealth* v. *Gallison*, 383 Mass. 659, 671 (1981).  *Commonwealth* v. *Blow*, 362 Mass. 196, 200 (1972).  See Mass. R. Crim. P. 9 (a), (c), (d), 378 Mass. 859 (1979).  Joinder may promote economy in the trial of criminal offenses, particularly when the same witnesses will testify concerning more than one offense.  Here, for example, the police who discovered the allegedly stolen gun while arresting the defendant for rape, and the victim, who had heard the defendant refer to the weapon as "hot," would testify as to both the rape and receipt of stolen property.

At the same time, joinder poses a danger of prejudice to the defendant.  When several offenses are joined for trial,

court may or may not agree with his decision.  The risks of prejudice to the defendant's right to a fair trial, and the public's interest in avoiding unnecessary retrials, may easily be avoided in most instances.  Preliminary thought by counsel must be devoted to the argument" (emphasis in original).  *Commonwealth* v. *Earltop*, 372 Mass. 199, 206 (1977) (Hennessey, C.J., concurring).

[8] These charges were possession of a firearm, possession of ammunition, possession of marihuana, and receipt of stolen goods (the gun).

[9] These charges were rape, kidnapping, assault and battery by means of a dangerous weapon, and commission of an unnatural sexual act.

the jury may receive the impression that the defendant has a general propensity for crime. Evidence of criminal propensity, otherwise irrelevant to the defendant's guilt or innocence of the crime charged, is inadmissible, and joint trial of offenses is improper if it will have the same effect. See *Commonwealth* v. *Gallison, supra* at 672-673; *Commonwealth* v. *Chalifoux,* 362 Mass. 811, 815-816 (1973).

On the other hand, evidence of other crimes is admissible when it tends to show a state of mind, common scheme, plan, or method of action bearing on the crime charged. See *Commonwealth* v. *Jackson,* 384 Mass. 572, 577 (1981); *Commonwealth* v. *Gallison, supra; Commonwealth* v. *Imbruglia,* 377 Mass. 682, 695 (1979). Accordingly, there is little danger of prejudice in joinder when the offenses joined are so related that commission of one is directly relevant to guilt or innocence of the other. Severance would serve no purpose in this circumstance, because each jury would hear evidence of both offenses. See *Commonwealth* v. *Gallison, supra* at 673. These principles are evident in the guidelines we have set forth to guide judges in the exercise of discretion. Joinder is warranted when "the offenses constitute a single line of conduct, grow out of essentially one transaction, and would be proved by substantially the same evidence." *Commonwealth* v. *Gallison, supra* at 671. *Commonwealth* v. *Blow, supra* at 200. See Mass. R. Crim. P. 9 (a)(1), 378 Mass. 859 (1979).

Here, the defendant's possession of a gun and ammunition may have had some bearing on the question of rape. These items added weight to the defendant's claim that he had murdered the victim's former boyfriend, and so might shed light on the events of July 4, and the defendant's or the victim's state of mind at the time. The possibility that the weapon was stolen property, however, had no relation to the incident of July 4. Nor was there any connection between the charges of rape and related offenses on July 4, and the defendant's possession of marihuana on July 24. As the Commonwealth points out, neither possession of marihuana nor receipt of stolen goods is an inflammatory offense,

or one likely to suggest a propensity to rape. It could be argued that joinder of either would not be so prejudicial as to require a reversal of convictions. See *Commonwealth* v. *Gallison, supra.* Nevertheless, when, as here, offenses are wholly unrelated, the judge should generally exercise his discretion in favor of separate trials. See Mass. R. Crim P. 9 (a) (4), 378 Mass. 859 (1979), and Reporters' Notes to Mass. R. Crim. P. 9 (a), Mass. Ann. Laws, Criminal Procedure at 132-133 (1979).

In sum, we conclude that due to the prosecutor's highly prejudicial display,[10] throughout his summation, of a length of rawhide not in evidence, the convictions from which the defendant appeals must be reversed.

Accordingly, the judgments are reversed, the verdicts set aside, and the case remanded for a new trial.

*So ordered.*

---

[10] We have no wish to comment here upon possible ethical implications of the prosecutor's conduct, or to suggest any conclusion on the issue whether that conduct was "intentional," particularly within the meaning of "Standards Relating to The Prosecution Function," S.J.C. Rule 3:08, PF 13 (a), as appearing in 382 Mass. 797, 802 (1981). Nevertheless, we observe that "a [trial] judge may refer conduct which violates the Code of Professional Responsibility to the Board of Bar Overseers for disciplinary action." *Beit* v. *Probate & Family Court Dep't*, 385 Mass. 854, 861 n.13 (1982).