COMMONWEALTH *vs*. JAMES M. HANEY.

Suffolk.   November 2, 1970. — December 4, 1970.

Present: TAURO, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Evidence*, Firearm, Of flight, Of consciousness of guilt.

At a trial for armed robbery, where there was evidence of an attempt
by the defendant to flee when his automobile was blocked by a police
car almost two weeks after the robbery, testimony by a police officer
concerning a gun, which was not used in the robbery or in the attempted
flight, found by the officer in the defendant's automobile when he was
arrested during the attempted flight, and the gun itself, were admissible
on the issue of flight.

INDICTMENT found and returned in the Superior Court on
February 4, 1969.

The case was tried before *DeSaulnier*, J.

*Steven R. Rubenstein* (*Reuben Goodman* with him) for the
defendant.

*John C. Mahoney*, Assistant District Attorney, for the
Commonwealth.

SPALDING, J.   The defendant, at a trial made subject to
G. L. c. 278, §§ 33A–33G, was convicted on an indictment
charging him with armed robbery.[1]   He appealed.

We summarize so much of the testimony as is necessary
to furnish a background for the questions presented.   One
Nelson Cripps was the manager of the First National Store
located at 545 Freeport Street, Dorchester.   He testified
that on December 27, 1968, at approximately 2 P.M., while
on duty in the store office, he heard someone say, "This is
a hold-up."   He looked out toward the grated window of
the office and saw a man with a silver or chrome plated
thirty-eight caliber revolver in his hand.   The gun had rust
spots on the end of its barrel.   The man with the gun
handed Cripps a paper bag and demanded that it be filled
with money from the drawer.   At this point in his testi-

---

[1] The defendant was tried jointly with codefendants Paul M. Cook and
Gino Mazzella, both of whom were convicted.

mony Cripps was shown a gun which he identified as the one that was pointed at him during the holdup. Upon later proof that this and another gun were found on January 3, 1969, in the search of a motorcycle club in Woburn frequented by the defendant, it was admitted in evidence. Cripps made an in-court identification of the defendant as the man who had the gun.

Officer John Gibbons testified that having been informed there was an arrest warrant outstanding for the defendant, he and several police officers went to the vicinity of the motorcycle club in Woburn on January 9, 1969, in a police car. He observed an automobile (operated by the defendant) backing into the street at a high rate of speed. Finding his route of escape blocked by a police car, the defendant shifted into forward speed in order to turn into a parking lot and thus evade the police. Gibbons ran after the defendant, and arrested him at gunpoint, ordering him to put his hands on the steering wheel. As he obeyed, the defendant looked up and to the left. Gibbons made a search of the vehicle and found a gun under the padding that separates the convertible top from the "normal outside section on the top." The gun was at the precise place where the defendant had looked when Gibbons first stopped him. The gun, "a .38 snub-nosed blue revolver with a brown handle," was admitted in evidence over the objection and exception of the defendant.

The defendant sought to prove an alibi, and supported it with a number of witnesses. His explanation for having a gun in his possession was that it was for protection. He further testified that he attempted flight because he had a gun in the car. On cross-examination the defendant admitted that at the time of his arrest there was ammunition for the gun in his jacket. There was expert testimony that this gun was capable of being fired.

The defendant argues only one question (assignment of error no. 5). He contends that the testimony of Officer Gibbons concerning the gun found in the car and the gun itself ought not to have been admitted in evidence, since

the gun was not and could not have been the one used in the robbery. This evidence, it is argued, was prejudicial to the defendant because it permitted the inference that he was a person of vicious and dangerous propensities.

The general rule is "that weapons found in the possession of a defendant are admissible only if they might have been used in the commission of the crime charged. . . . Otherwise an inference that a defendant has vicious and dangerous propensities might be drawn that would be prejudicial to him." *Commonwealth* v. *West*, 357 Mass. 245, 248. *Commonwealth* v. *O'Toole*, 326 Mass. 35, 39. *Commonwealth* v. *McLaughlin*, 352 Mass. 218, 229–230. This is a sound rule and we are not disposed to dilute it. But in the circumstances obtaining here that rule is not controlling. When the defendant was arrested he was attempting to flee from the police. "Flight from justice, and its analogous conduct, have always been deemed indicative of a consciousness of guilt. 'The wicked flee, even when no man pursueth; but the righteous are bold as a lion.' . . . It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, . . . and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." Wigmore on Evidence (3d ed.) § 276. And see *Commonwealth* v. *Tolliver*, 119 Mass. 312, 315; *Commonwealth* v. *Brigham*, 147 Mass. 414; *Commonwealth* v. *Madeiros*, 255 Mass. 304, 314. Thus evidence of the defendant's attempted flight was clearly admissible against him on the issue of guilt. The question to be decided narrows down to whether the testimony of Officer Gibbons concerning the gun found in the car at the time of his arrest and the introduction of the gun in evidence was admissible on the issue of flight. We think that it was.

Officer Gravel, a ballistics expert, testified that the gun found in the search of the car was in good working order and capable of being fired. The defendant admitted on cross-examination that ammunition for the gun was on his person at the time of his arrest. Thus at the time of the

defendant's flight from the police he had in the car within his immediate reach, a thirty-eight caliber revolver in good working order and ammunition for it in his jacket. It is not unreasonable to infer that this gun was part of the means by which the defendant planned to effectuate his escape from the police; it had a bearing on the attempted escape and showed that the defendant, if necessary, was prepared to resort to force to accomplish it. The evidence was therefore admissible on the issue of flight. This is true, even though the defendant never actually used the gun in his escape. *Commonwealth* v. *Mercier,* 257 Mass. 353, 368–369.

*Judgment affirmed.*