COMMONWEALTH *vs.* FRANK A. BENJAMIN, JR.

Worcester. February 2, 1976. — February 26, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Homicide. Practice, Criminal,* Exceptions: failure to save exception. *Jury and Jurors.*

No prejudicial error was shown at a criminal trial in an instruction to the jury at the close of the first day of evidence that they were free to discuss the case among themselves in the jury room and with their spouses without expressing opinions; this court, however, disapproved the instruction and suggested one more appropriate. [771-772]

At the trial of the defendant for the murder of his wife, where there was evidence that the defendant was upset by his wife's desertion and infidelity and by the denial of access to his children, that about two hours before the homicide he had argued with his wife, and that he waited in an alleyway until she left a café and then stabbed her, there was no error in the judge's instructing the jury that manslaughter was not a possible verdict. [773-774]

INDICTMENT found and returned in the Superior Court on June 21, 1974.

The case was tried before *Brogna, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Daniel F. Toomey* for the defendant.

*John M. O'Connor,* Assistant District Attorney, for the Commonwealth.

BRAUCHER, J.   The defendant, who was charged with the murder of his wife, appeals from a conviction of murder in the second degree.   He claims error in three respects:   (1) instructions to the jury as to discussion during trial, (2) failure to instruct the jury that evidence of a prior attack was admitted for a limited purpose, (3) withdrawal from the jury of the possibility of a manslaughter verdict.   He also asks (4) that we direct the entry of a verdict of guilty of manslaughter under G. L. c. 278, § 33E.   We hold that the first two contentions are not open on the record, although we disapprove the instruction to the jury on discussion.   We also uphold the judge's ruling that there was no evidence of manslaughter, and we decline to grant relief under § 33E.

1. *Jury discussions.*   At the close of the first day of evidence, the judge instructed the jury[1] that they were

---

[1] "I just like to caution you — of course, while you are alone amongst yourselves in your jury room, you are free to discuss the case and the evidence that you've heard.   I would prefer, however, that while at lunch, you are coming into the corridors or passing through the court house, you don't discuss it because somebody might overhear what you are saying or something.   And also, I know it is hard

free to discuss the case in the jury room among themselves and that a married juror could tell his or her spouse what the juror had heard. He also said, "Don't express any opinions." There was no objection or exception to these instructions, and any error with respect to them is waived. Since there is no showing of prejudice to the defendant, we do not consider them under § 33E. *Commonwealth* v. *Coleman*, 366 Mass. 705, 710-711, 711-712 (1975). Cf. *Myres* v. *United States*, 174 F.2d 329, 335 (8th Cir.), cert. denied, 338 U.S. 849 (1949); *Wilson* v. *State*, 4 Md. App. 192, 195-201, cert. denied, 251 Md. 753 (1968), cert. denied, 394 U.S. 975 (1969); *Cook* v. *Atlantic Coast Line R.R.*, 196 S.C. 230, 249 (1941); *Annot.*, 21 A.L.R.2d 1088, 1110-1113 (1952).

We take this occasion, however, to disapprove the instruction given. An appropriate instruction for such occasions is found in 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 10.01 (2d ed. 1970):[2] "Until this case is submitted to you, you must not discuss it with anyone, even with your fellow jurors. After it is submitted to you you must discuss it only in the jury room with your fellow jurors. It is important that you keep an open mind and not decide any issue in the case until the entire case has been submitted to you under instructions of the court." We recognize that it is hard for a juror to obey such instructions, particularly in talking to a spouse, and it can be argued that they are largely unenforceable. But they are sound; if followed, they avoid a variety of troubles. In particular, we do not think it is useful to ask lay jurors to distinguish in conversation between opinion and fact.

---

for those of you that are married not to tell your spouse, you know, something about what you are hearing. And that is perfectly all right. Don't express any opinions. Tell him what you heard."

[2] See also § 5.03; 2 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 80.16. The latter provides a more elaborate charge for civil cases, which seems equally suitable for criminal cases.

2. *Prior attack.* Two witnesses testified to an attack by the defendant on his wife about two weeks before the homicide. No exception was taken to the testimony of the first witness, but an exception was taken after objection to the testimony of the second witness on the ground of materiality. The defendant now concedes, as the judge ruled, that the evidence might have some bearing on the defendant's feelings or motive. *Commonwealth* v. *Bartolini,* 299 Mass. 503, 510-511, cert. denied, 304 U.S. 565 (1938). But, he says, a limiting instruction was essential. This point was not made at the trial, and is not open here. *Commonwealth* v. *Stout,* 356 Mass. 237, 243 (1969).

3. *Evidence of manslaughter.* The defendant contends that the evidence warranted a finding that the defendant killed his wife in the heat of sudden passion generated by extreme provocation, and that the judge therefore erred in instructing the jury that manslaughter was not a possible verdict. There was evidence that the defendant had a deep emotional attachment to his wife and children, that he was extremely upset by his wife's desertion and infidelity and by denial of access to his children and discovery of their placement in a foster home, and that he attacked and threatened his wife and drank heavily. There was also evidence that about two hours before the homicide he had an argument with his wife and was told by a police officer to leave the area, that later he talked to his minister who also told him to leave the area, that he was waiting in an alleyway when his wife left a café about 1 A.M., and that as she left he grabbed her about the neck from behind, spoke a few words and stabbed her in the neck.

There is no suggestion of involuntary manslaughter. The argument is that there was voluntary manslaughter, "a slaying without malice in the heat of passion or anger." *Commonwealth* v. *Lewinski,* 367 Mass. 889, 896 (1975). A more complete statement is that voluntary manslaughter is "a killing from a sudden transport of

passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat." *Commonwealth* v. *Soaris*, 275 Mass. 291, 299 (1931). *Commonwealth* v. *Caine*, 366 Mass. 366, 375 (1974), and cases cited. There was no "sudden combat," and the case turns on "reasonable provocation." The judge said that under our law "anger at one's wife for not remaining his wife, anger at one's wife for not allowing him to see his children, anger at one's wife because he suspects her of playing around, as opposed to actually catching her in the act, and acting in sudden rage of passion," is "not sufficient provocation to reduce a homicide, murder to manslaughter." We agree. Cf. *Commonwealth* v. *Soaris*, 275 Mass. 291, 299-300 (1931); *Commonwealth* v. *Hartford*, 346 Mass. 482, 491 (1963); *Commonwealth* v. *Leate*, 352 Mass. 452, 458 (1967); *Commonwealth* v. *Rembiszewski*, 363 Mass. 311, 321 (1973); W. LaFave & A. Scott, Criminal Law § 76 (1972); R. Perkins, Criminal Law 53-69 (2d ed. 1969).

4. *Section 33E.* The transcript has been read in the light of our power and duty under G. L. c. 278, § 33E. We do not find reason to disturb the conviction.

*Judgment affirmed.*