COMMONWEALTH *vs.* DAVID BRUCE McCOLL.

Suffolk. April 3, 1978. — May 23, 1978.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & LIACOS, JJ.

*Practice, Criminal,* Charge to jury, Comment by judge, Motion to suppress, Argument by prosecutor. *Insanity.*

The judge at a criminal trial did not err in instructing the jury with respect to a verdict of not guilty by reason of insanity that, at any of the successive court hearings required by law subsequent to such a verdict, the defendant's mental condition might be found to be such as to make the defendant eligible for release from all custody. [320]

Taken as a whole, a judge's instructions to the jury in a criminal case with respect to medical testimony and conflicting psychiatric opinions were fair and correct. [320-321]

There was no merit in a defendant's claim that the judge at a criminal trial improperly commented on the evidence. [321-322]

A defendant who was not charged with a capital crime was not entitled to extra peremptory challenges under G. L. c. 234, § 29. [322]

The judge at a criminal trial did not abuse his discretion in denying the defendant's untimely pre-trial motion to suppress evidence. [322-323]

Comments by a prosecutor in his closing argument that the jury should rely on their common knowledge that not all criminals are insane, that the public has rights as does the defendant and the case should be decided on evidence rather than on sympathy, and that the circumstances of the defendant's arrest supported an inference of his consciousness of guilt were not improper. [323]

Comments by a prosecutor in his closing argument that the defendant was dissembling in his claim of insanity and that the psychiatrist who supported the defendant's claim was not credible in his opinions were predicated on the evidence and were within proper bounds. [323-324]

In the context of a prosecutor's lengthy closing argument, his comments implying that defense counsel contrived with the defendant to present a false claim of insanity, although improper, were not so prejudicial as to constitute reversible error. [324-325]

INDICTMENTS found and returned in the Superior Court on September 21, 1972.

The cases were tried before *Roy*, J., and were reported by the Appeals Court for direct appellate review.

*Jerry C. Effren* for the defendant.

*Thomas J. Mundy, Jr.*, Assistant District Attorney, for the plaintiff.

HENNESSEY, C.J. These are appeals under the provisions of G. L. c. 278, §§ 33A-33G, from two convictions of armed robbery, one of rape, and one of breaking and entering a dwelling house with the intent to commit a felony. The defendant was found guilty after a jury trial in the Superior Court. The judge imposed four life sentences, with two of the sentences to be served concurrently with each other, and the other two sentences to be served concurrently with each other from and after the terms first imposed.

The appeals were first entered in the Appeals Court. That court reported the case to this court without decision, stating that the Justices of that court were divided equally on the issue of the propriety of the prosecutor's closing argument to the jury.

The defendant now asserts error in the judge's charge to the jury as to the legal consequences of a verdict of not guilty by reason of insanity (the so called Mutina instructions, *Commonwealth* v. *Mutina*, 366 Mass. 810 [1975]); in the judge's charge relating to the credibility of medical witnesses, the defendant contending that the instructions improperly conveyed to the jury the judge's own conclusions as to the credibility of witnesses offered by the defense; in a comment the judge made while excluding some proffered evidence as to a "paranoid schizophrenic in remission"; in the judge's denial of the defendant's request to be allowed sixteen peremptory challenges; in the judge's refusal to allow the defendant to file late a motion to suppress evidence; and in several allegedly improper statements by the prosecutor in his closing argument to the jury. We conclude that there was no error, and the judgments shall be affirmed.

The facts are as follows. On the night of April 5, 1972, the victims, Ms. C and Mr. W, returned home about 11 P.M. from an evening with friends in Framingham. As they

walked toward their apartment building in Boston, they saw a man, later identified as the defendant, and a woman loitering outside, leaning against a tree.

Ms. C and Mr. W went into the foyer of their building. Mr. W checked the mailbox and then bent over to unlock the inner security door. While Mr. W was opening the door, the defendant and his woman accomplice entered the foyer. Ms. C saw that the defendant had a large black gun aimed at Mr. W and that the woman had a small silver gun drawn. Ms. C called out, and Mr. W turned around and found the defendant pointing a gun at his face and ordering him to "Shut up. Keep quiet and get in." Mr. W opened the security door. Once inside, the defendant and his companion, keeping in back of the victims, forced the victims at gunpoint up the staircase and into their third floor apartment.

Thereafter, the victims were tied up with cords by the defendant and his accomplice. They were held captive all that night. The defendant raped Ms. C repeatedly, and forced her to perform fellatio on him. The woman took Mr. W's watch, as well as a Master Charge card, a library card, a social security card, a selective service card, and a Hertz credit card. The defendant at one time grabbed Mr. W by the hair; Mr. W also suffered severe injuries to his wrists by reason of the tight bindings.

In the early morning, the defendant forced Ms. C, under threats, to persuade Mr. M, the unsuspecting occupant of a neighboring apartment, to join them. Thereafter, Mr. M was robbed of his billfold and was bound by the defendant and his accomplice. The two assailants ultimately departed, taking with them a radio, camera equipment, Mr. W's identification cards, some hashish, and some clothing from Mr. W's apartment. A cassette recorder, a player, a billfold, Mr. M's passport, driver's license, social security card, library card, and $8 were missing from Mr. M's apartment.

On July 12, 1972, a man later identified as the defendant, accosted one Mr. B with a black .44 magnum revolver on the lighted stairway of 5 Myrtle Street in Boston. Mr. B

disarmed the defendant and gave the gun to Boston police Officer John J. Dennehy. Officer Dennehy testified that the gun at trial, exhibit 13, was the one that Mr. B gave him. Ms. C and Mr. M both testified that the gun at trial looked like the one the defendant used the night of April 5, 1972.

The defendant was arrested on August 16, 1972. While patrolling alone on route 128, State Trooper Richard Savage observed a white 1963 Chevrolet convertible with a dark top, license number 65588N, parked at a rest stop. Since a vehicle with that description was noted in a police bulletin seeking the arrest of the defendant for several crimes, Trooper Savage stopped to investigate. With the information from the bulletin that the defendant was armed and dangerous, Trooper Savage approached the vehicle with his gun drawn. The defendant was lying on the front seat apparently asleep. Trooper Savage nudged the defendant and ordered him to sit up, slide over, and put his hands on his head.

Once the defendant sat up, the trooper ordered him twice to place his hands on the steering wheel. Ignoring the trooper's command, the defendant asked if he could put his sandals on. Despite Trooper Savage's negative answer, the defendant bent down. At that point, Trooper Savage pulled the defendant from the car and placed him under arrest. On the floor, Trooper Savage saw a fully loaded, chrome plated, .32 caliber Smith and Wesson revolver, exhibit 14. Ms. C testified that the revolver identified by Trooper Savage as the one found in the defendant's automobile also resembled the one held by the woman on the night of April 5. At some point after the arrest, Trooper Savage also took the defendant's driver's license from him.

After bringing the defendant to Foxborough State police barracks, Trooper Savage received a search warrant for the defendant's car from the District Court of Western Norfolk. A search of the vehicle revealed a series of credit cards, a library card, and a radio. Mr. W identified the cards as his and both he and Ms. C identified the radio as the one taken from their apartment on the night of April 5. The defendant

was identified by all three victims, first by photographs, then in person in the Municipal Court of the Roxbury District, and later at the Superior Court trial.

1. The defendant exercised his option under *Commonwealth* v. *Mutina*, 366 Mass. 810 (1975), by requesting an instruction to the jury on the consequences of a verdict of not guilty by reason of insanity. The gist of his present assertion of error is that the judge in his charge disclosed to the jury that, at any of the successive and periodic court hearings required by the law subsequent to a verdict of not guilty by reason of insanity, the defendant's mental condition might be found by the judge to be such as to make the defendant eligible for release from all custody.[1]

There was no error. *Mutina* does not require or suggest that an inaccurate summary of the applicable law be given to the jury or, as the defendant's argument seems to suggest, that the judge should predict to the jury the likelihood that the defendant would not be released from custody at any future hearing. Nor was it improper for the judge, in discussing the consequence of a possible later judicial finding that the defendant was not mentally ill, to use the words "he'd go right out onto the street." This was appropriate comment in light of the fact that the defense counsel stated unequivocally, in his closing argument to the jury, that "he's not going to walk out of here if you find him not guilty by reason of insanity. He's going to go back to Bridgewater where he's been for over three years."

2. The defendant argues that the judge's instructions to the jury were erroneous in several aspects other than those concerned with the *Mutina* instructions. The defendant's assertion of his exception as to the instructions was "to the entire charge." This catchall statement saved no rights (see *Commonwealth* v. *Benjamin*, 369 Mass. 770, 772 [1976]), and we need concern ourselves no further in this area.

---

[1] This portion of the charge was, although not phrased in the precise terms of the applicable statute (G. L. c. 123, § 16), a correct statement of the requirements of the law.

Nevertheless, we have examined the charge and we find it fair and correct.

The defendant contends that the judge, in analyzing the medical testimony and in attempting to assist the jury in their judgment of conflicting psychiatric opinions, implied in his comments that the medical witnesses offered by the defendant were unworthy of belief. The defendant agrees that a judge may properly engage in analysis of the evidence and may instruct the jury in language that is "comprehensively strong, rather than hesitatingly barren or ineffective." *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 520 (1972), quoting from *Whitney* v. *Wellesley & Boston St. Ry.*, 197 Mass. 495, 502 (1908). The risk in a "strong" charge is obvious and substantial; it increases the chance that the judge may improperly comment on the evidence or invade the jury's function as to credibility of witnesses. See G. L. c. 231, § 81. Nevertheless, in our view, the charge in this case, taken as a whole, was evenhanded and fair. The judge succeeded in giving the jury many practical standards and tests with which to approach the conflicting expert opinions.

3. The defendant argues that the judge's comment in the following colloquy denied him a fair trial: DEFENDANT'S COUNSEL: "Well, you're talking about seeing someone who has been diagnosed as a paranoid schizophrenic in remission, which is not your diagnosis?" THE PROSECUTOR: "Objection." THE JUDGE: "Excluded. There's nothing of that sort in this case."

The exclusion of the question is not challenged. The defendant's only contention is that the judge impermissibly commented on the evidence. We disagree. The defendant characterizes the remark "[t]here's nothing of that sort in this case" as an opinion by the judge that there was no credible evidence of schizophrenia on the part of the defendant and such evidence was not even involved in the case. We think that the Commonwealth is correct in its assertion that it is inconceivable that the jury would be left with such an impression. This is true for two reasons. First, the judge

went to elaborate lengths in his charge to focus on and clarify exactly the issue whether the defendant suffered from schizophrenia at the time of the crimes. He took obvious pains in an attempt to help the jury decide this central issue. Second, the challenged remark was made in excluding one of a series of improper questions. With the remark thus buried, the likelihood of the judge's ruling being construed as a comment on the evidence is diminished further.

4. The defendant asserts that, because sixteen jurors were chosen, he was entitled under G. L. c. 234, § 29, to extra peremptory challenges. This is not so. Under the statute extra peremptory challenges are available only in "*a capital case* in which additional jurors are chosen under section twenty-six B" (emphasis supplied). None of the indictments against the defendant are capital cases. The death penalty is not, and never has been, assessed for these offenses. Cf. *Commonwealth* v. *O'Brien*, 371 Mass. 605 (1976).

5. The defendant contends that the judge abused his discretion by denying the defendant's untimely pretrial motion to suppress evidence. There was no error. Clearly the motion to suppress was offered late, and the defendant's supporting affidavit was inadequate, under Rule 61 of the Superior Court (1954). Even if we accept the defendant's premise that his assertion of constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution cannot be frustrated in these circumstances by the application of a procedural rule (cf. *Henry* v. *Mississippi*, 379 U.S. 443, 448-449 [1965]; *Cortellesso* v. *Commonwealth*, 354 Mass. 514 [1968]), it is clear that there was no indication of an illegal search shown here. On the contrary, the record, including a voir dire held during trial, sufficiently shows that the search and seizure here were valid. The defendant was arrested at gunpoint on probable cause. The policeman used necessary force to pull the defendant from his automobile, and thereby inadvertently brought into plain view the gun which was seized. The policeman searched the vehicle, and later seized other items on the

authority of a search warrant which he procured on a sufficient affidavit.

6. Finally, we turn to the defendant's argument that the prosecutor's closing statement was so far beyond permissible limits as to require reversal and a new trial. We pass over the Commonwealth's preliminary position that the defendant did not adequately save his rights as to these issues, either during or after the argument of the prosecutor. As to this, we conclude that the defendant sufficiently asserted his exceptions, although barely so, as to five specific aspects of the prosecutor's argument.

Although the judge charged the jury that the argument of counsel was not evidence, the defendant contends that he was entitled to more specific admonitions, or a mistrial, as a remedy for the overreaching of the prosecutor.

We dispose of three of the defendant's points briefly: (1) there was no impropriety in the prosecutor's argument that the jury should rely on their common knowledge (see *Commonwealth* v. *Kostka*, 370 Mass. 516 [1976]) that not all criminals are insane, particularly in light of the defense argument that in substance could be construed as proposing that the nature of the offenses supported a finding of insanity; (2) it was proper for the prosecutor to argue that the public has rights as does the defendant, see *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 31 (1923), and that the case should be decided on the evidence rather than on sympathy; (3) the evidence warranted the prosecutor's argument that the circumstances of the defendant's arrest supported an inference of his consciousness of guilt of the crimes for which he was being sought, on the ground that the jury could infer that he was willing to use deadly force against the police officer in order to avoid arrest. See *Commonwealth* v. *Haney*, 358 Mass. 304, 306 (1970).

The defendant's final point challenges the prosecutor's argument that the defendant was dissembling in his claim of insanity and that the psychiatrist who supported his claim was not credible in his opinions. The defendant further contends that certain statements made by the prosecutor could

be said to accuse defense counsel of contriving the false claim. The defendant relies on such cases as *Commonwealth* v. *Burke*, 373 Mass. 569, 576-577 (1977), and more particularly relies on *Commonwealth* v. *Shelley*, 374 Mass. 466 (1978). As to the attacks on the defendant's claim of insanity, and the psychiatrist's credibility, the prosecutor's argument was within proper bounds. Nothing that we have said in any prior opinion precludes such arguments, provided that they are fair and predicated on the evidence. In the *Shelley* case, this court found error because the prosecutor unfairly argued in substance, inter alia, that the psychiatrist's opinions had been bought by large fees, when there was no evidence in the case as to the amount of fees paid. The *Shelley* case does not endow the testimony of experts with any special immunity from the jury's broad function of assessing the credibility and reliability of witnesses. In the instant case, it was appropriate for the prosecutor to press his contentions as part of a lengthy argument that analyzed in detail the contrasting psychiatric opinions, as well as the bases of those opinions.

The remarks of the prosecutor which referred to defense counsel's role in preparing the case present a closer question. In form, they presented an imaginary conversation between defense counsel and the defendant.[2] Clearly, the comments should not have been made. As in many other such instances, they were unnecessarily injected into the case, although they could not possibly be of any valid assistance

---

[2] The remarks were as follows: "Did Mr. Troy go up to his defendant, put his hand on his back, as he's taking his fee with the other hand, and say, 'David, you're pretty sick. I'm going to see what I can do to help you.' Or did he say, 'David, Houdini couldn't help you out of this one. We're going to have to punt, and have to send you to the funny farm. Try an insanity defense.'"

The comments followed immediately: "What did Dr. Balcanoff testify to when he examined Mr. McColl in the early fall? He found that he was competent. He found normal memory, rational behavior. No evidence of psychosis. And then about the same period of time there was a meeting down the jail between Mr. Troy and Dr. Mezer and the client. The next thing you know, there was observation at Bridgewater."

to the jury in their determinations. See *Commonwealth* v. *Earltop* (Hennessey, C.J., concurring), 372 Mass. 199, 206 (1977). We think, however, that, in the entire context of the prosecutor's lengthy argument and in all the circumstances of the case, the remarks should not be considered so prejudicial as to require reversal. The prosecutor's basic premise that the claim of insanity was contrived by the defendant was warranted by the evidence, as the prosecutor demonstrated in his lengthy argument. In the context of that lengthy argument, the improper remarks were not of great consequence. We think, also, that the Commonwealth is justified in its present argument that, although the comments should not have been made, they were a facetious response to similar humorous and personal references to the prosecutor made by the defense counsel in his argument,[3] and the jury undoubtedly accepted them in that spirit. We have given limited tolerance to the principle of "fight fire with fire" in cases concerning prosecutorial overreaching, see *Commonwealth* v. *Burnett*, 371 Mass. 13, 18-19 (1976), but by far the better course is for the prosecutor to seek redress from the court by recording his objections to the defense counsel's argument rather than indulging in self-help. It is fair to say that neither counsel assisted the process of reasoned jury deliberation by the excesses in which each indulged.

*Judgments affirmed.*

---

[3] Defense counsel at one point argued: "Don't let him [Mr. Mundy] con you. He wants you to think that my client was trying to con people. Don't be conned by the manner in which you received the evidence."