## COMMONWEALTH vs. GEORGE E. HOGAN.

Suffolk.    September 15, 1981. — November 25, 1981.

Present: BROWN, DREBEN, & KASS, JJ.

*Evidence,* Other offense, Relevancy and materiality, Motive, Collateral matter. *Practice, Criminal,* Argument by prosecutor, Security measures in courtroom. *Error,* Harmless.

A defendant convicted of assault and battery with intent to commit murder and assault and battery by means of a dangerous weapon was entitled to a new trial as a result of conduct by the prosecutor in intentionally eliciting testimony naming the defendant as a prime suspect in an unrelated murder and in making improper and inflammatory remarks during closing argument, including reference to the defendant as a "hit man," and as a result of introduction of evidence, for the purpose of establishing a retaliatory motive, that the victim had attempted to swindle an alleged bookie without any showing of a link between the defendant and the bookie. [648-655]

If on retrial of a defendant convicted of assault and battery with intent to commit murder and assault and battery by means of a dangerous weapon the prosecutor intends to have the victim and chief prosecution witness escorted to the courtroom and to the witness stand by law enforcement officials and no agreement can be reached between counsel, the prosecutor should inform the trial judge in advance why such measures are necessary. [655-656]

At the trial of a defendant charged with assault and battery with intent to commit murder and assault and battery by means of a dangerous weapon the judge did not abuse his discretion in excluding evidence of prison records allegedly describing homosexual behavior by the victim offered to impeach the victim's testimony. [656-657]

COMPLAINTS received and sworn to in the South Boston Division of the District Court Department on April 4, 1980.

The cases were tried in the Superior Court Department before *Prince,* J.

*Ronald Ian Segal* for the defendant.

*Thomas J. Mundy, Jr.*, Assistant District Attorney (*Carol Anne Fagan*, Special Assistant District Attorney, with him) for the Commonwealth.

BROWN, J. The defendant, George Hogan, appeals from his convictions by a jury in the Superior Court on complaints charging assault with intent to commit murder (G. L. c. 265, § 18) and assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A). The defendant claims he was unfairly prejudiced at trial in that: (1) the prosecutor intentionally elicited from the victim testimony naming the defendant as a prime suspect in an unrelated murder and, in addition, made improper and inflammatory remarks to the jury during closing argument, (2) immaterial and highly prejudicial testimony purporting to show motive was improperly admitted in evidence, (3) the jury's observation of the victim being unnecessarily escorted to the witness stand was unduly prejudicial, and (4) the trial judge refused to allow the Keeper of Records of the Department of Correction to testify. While we do not have to rule that any one of the claims of error, taken by itself, was necessarily so prejudicial that a reversal of the defendant's convictions is required, we do think that the cumulative effect of some of the alleged errors "may have been significant prejudice, and order a new trial." *Commonwealth* v. *Redmond*, 370 Mass. 591, 596 (1976).

The trial lasted ten days and the transcript exceeds one thousand pages. The victim, a rather unsavory character, had been accosted by two men and shot five times late at night on a street in the South Boston section of the city. The case against the defendant was a strong one, notwithstanding the fact that all the inculpatory evidence adduced at trial originated with the victim, and that the defendant produced considerable alibi and other exculpatory testimony, including several reputable witnesses, e.g., a person who was on the waiting list for a position on the Boston police force and a former District Court probation officer. As a complete recitation of the facts would serve no useful pur-

pose, we will advert only to the evidence pertinent to the disposition of the various assignments of error.[1]

1. *Evidence of other crimes.* On cross-examination by defense counsel, the victim, Ronald Hood, was interrogated concerning rewards and inducements. In response to questions concerning his motive for wanting to get into the Federal witness protection program, Hood indicated that he had been informed by the prosecutor that a letter had been written on his behalf in order to get him into the program. When asked "what did the letter say," Hood responded "[t]hat I got shot five times . . . [and] my life is in danger." To further probing he said that he could not "recall the rest of the letter." During redirect examination of Hood, a bench conference was held on an unrelated matter. At the end of the conference the prosecutor referred to the defense counsel's cross-examination relative to the letter that was written on Hood's behalf, and indicated that he wished to inquire further on that subject. Upon resumption of redirect, the prosecutor produced a copy of the letter. From what we can discern from the record, the scenario unfolded as follows. After the letter was shown to Hood, ostensibly to refresh his memory, the prosecutor offered it as an exhibit. Defense counsel, while chiding the prosecutor for not showing it to him (defense counsel), attempted to make a motion. The letter was then offered to defense counsel, but it is not clear whether he read the entire letter at this point. Although his reasons were somewhat wide of the mark, defense counsel eventually objected to the offering of the letter as an exhibit. The judge, who apparently had not read the letter,[2] refused to admit the letter as an exhibit, but he did permit it

---

[1] We do not discuss the consequences of the defendant's claim that he was unfairly prejudiced when certain members of the jury "inadvertently" viewed him in handcuffs, as such an occurrence is not likely to recur at retrial.

[2] As will be seen below, the judge, a little later, in the course of instructing the jury to disregard Hood's damaging reference to the defendant, said that "the Court was not aware of the [prejudicial language in the letter] and would have stricken [it] before it was admitted."

to be marked for identification. Hood then was asked, "What else do you recall in the letter?" Hood replied that his "[l]ife was in danger" and that "George Hogan was the chief suspect in . . . the murder of a witness against his [Hogan's] brother." Defense counsel's request to approach the bench was denied and the prosecutor was permitted to continue this line of questioning. Hood repeated the damaging accusation once more. Defense counsel again sought to approach the bench and this time his request was granted. After some discussion at the bench the defendant's request for a mistrial was denied,[3] but the judge gave a curative instruction to the jury and ordered the statement stricken. Defense counsel objected to the instruction for fear that mentioning it again would merely "reemphasize it."

Defense counsel argues that this was improper conduct on the part of the prosecutor because he intentionally elicited the prejudicial testimony knowing full well that had the judge been made aware of the nature of the material he would likely have placed some restrictions on the prosecutor's inquiries. We agree. See *Commonwealth* v. *Welcome*, 348 Mass. 68, 70 (1964). See also *Commonwealth* v. *Schoening*, 379 Mass. 234, 242 (1979), and cases cited. Even if the letter was "opened up," as contended by the prosecutor,[4] and even though defense counsel was remiss in not carefully reviewing the letter, the prosecutor should have informed the court, in advance, of those portions of the letter which

---

[3] It cannot be gainsaid that "[w]hether to grant a mistrial is largely a discretionary matter." *Commonwealth* v. *Barnett*, 371 Mass. 87, 96 (1976), cert. denied, 429 U.S. 1049 (1977).

[4] The prosecutor contends that he was "entitled to pursue the nature" of the victim's motive for wanting to get into the Federal witness protection program. *Commonwealth* v. *Key*, 381 Mass. 19, 28-29 (1980). We think that the *Key* case and the other cases cited by the Commonwealth are inapposite, as in those cases the question on appeal was whether the judge had abused his discretion as to the scope of an examination. Here the judge had no opportunity to exercise that discretion as he was not made aware of the letter's contents.

In any event, we are of opinion that the subject was not "opened up." Compare *Commonwealth* v. *Cadwell*, 374 Mass. 308, 313-314 (1978).

he knew were enormously prejudicial. Cf. *Berger* v. *United States*, 295 U.S. 78, 88 (1935) (the interest of the Commonwealth "in a criminal prosecution is not that it shall win a case, but that justice shall be done"). "Under the circumstances, the prosecutor's disclaimer of an intent to introduce . . . [evidence of another crime committed by the defendant] for [its] prejudicial effect has all the persuasiveness of a pitcher's protestations after bean-balling the lead opposition batter. It could be true, but one might doubt it." *Allen* v. *Snow*, 635 F.2d 12, 15 (1st Cir. 1980), cert. denied, 451 U.S. 910 (1981).

The question before us is whether the action of the judge in striking the testimony and giving a curative instruction was sufficient to remove the damaging testimony from the consideration of the jury.[5] Cf. *Commonwealth* v. *Redmond*, 370 Mass. at 596. "Ordinarily such instructions are deemed to cure any prejudice resulting from the jury's exposure to prior crimes or conduct of the accused." *Allen* v. *Snow, supra* at 15. However, in the context of the evidence presented in this case we cannot say that the jury did not consider this in their deliberations. See *Commonwealth* v. *Welcome*, 348 Mass. at 70. The danger becomes all the more real when viewed in the light of the prosecutor's closing argument, grounded on rather tenuous evidence of motive, in which he stated that the defendant is a "hit man" by profession. See parts 2 & 3, *infra*. We thus do not have to decide whether Hood's testimony alone would constitute reversible error.[6] It is difficult, however, to imagine a statement more prejudicial to a defendant on trial for attempted

---

[5] After denying the motion for a mistrial, the trial judge understandably manifested concern as to the effect of Hood's statement by saying: "I am troubled by [Hood's] answer, I admit, and it may be reversible error. I don't know. I have cured it to the best of my ability by a proper instruction to the jury."

[6] "The defendant argues quite properly that the prejudicial impact of the prosecutor's [conduct] should be assessed by looking at the combined effect of all his errors." *Commonwealth* v. *Borodine*, 371 Mass. 1, 11 (1976), cert. denied, 429 U.S. 1049 (1977).

murder than one coming from the victim of the attack that his life is in danger and that the defendant is the chief suspect in a murder case. "In such circumstances we have a duty to be skeptical as to the effectiveness of limiting instructions." *Commonwealth* v. *Redmond*, 370 Mass. at 597.

2. *Prosecutor's closing argument.* The prosecutor made several remarks during the course of his closing argument based on facts not in evidence. He also attacked the character of the defendant, an issue which had not been raised at trial. Among numerous improper sallies the prosecutor stated: "Do we tell the underworld: Send out your hit men. Feel free to so long as the person under contract is an ex-con?" He also said: "[T]he inference is there that this man [Hogan] is a hit man[7] for all your nice bookmaking out of Whitey's Place." The prosecutor also suggested by innuendo that "[i]f you draw that inference, you know what Hogan does for a living."

Contrary to the assertion of the Commonwealth, prefacing closing remarks by such words as "infer" and "inference" does not automatically obviate a finding of prejudicial error. The comments must be reviewed in the context of the entire argument. The law is clear that the prosecutor is limited in scope of summation "to the evidence and the fair inferences from the evidence." *Commonwealth* v. *Burke*, 373 Mass. 569, 575 (1977), quoting from *Commonwealth* v. *Earltop*, 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring). See *Commonwealth* v. *Blaikie*, 375 Mass. 601, 612 (1978); *Commonwealth* v. *O'Brien*, 377 Mass. 772, 778 (1979), quoting from S.J.C. Rule 3:22A, PF 13(a), 377 Mass. 927 (1979). See also S.J.C. Rule 3:22A, PF 14, 377 Mass. 927 (1979). "Deviations from this rule, when prejudicial to the defendant, are only self-defeating to the Commonwealth."[8] *Commonwealth* v.

---

[7] Although the use of this term might be explained by defense counsel's rhetorical question in his closing argument asking "[Do you think that] Hogan, who is supposed to be the hit man, is going to let [the victim] live, put pellets in him and not complete the job, knowing he was recognized," its use in this context by the prosecutor was not justified.

[8] The assistant district attorney also said: "Now, George Hogan stands before you for justice. But it's not only justice for George Hogan. It's also

*Shelley*, 374 Mass. 466, 472 (1978). The prosecutor's statements labelling the defendant as a "hitman" and his reference to the "underworld" were beyond the evidence. He also urged the jury to discount all testimony of witnesses favorable to the defendant, intimating several times that these persons were paid off, threatened, or not to be believed because they were all from the "lower end" of South Boston. Such statements are impermissible. See *Commonwealth* v. *Graziano*, 368 Mass. 325, 332 (1975). Compare *Commonwealth* v. *MacDonald* (*No. 1*), 368 Mass. 395, 402 (1975).

In his reference to closing arguments in the course of his charge to the jury the trial judge failed to state clearly the critical and traditional admonition that closing arguments are not evidence.[9] See *Commonwealth* v. *Villalobos*, 7 Mass. App. Ct. 905 (1979); *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 9 (1980). Contrast *Donnelly* v. *DeChristoforo*, 416 U.S. 637, 644 (1974); *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 665 (1979); *Commonwealth* v. *O'Brien*, 377 Mass. 772, 777 (1979). Moreover, in light of the numerous transgressions on the part of the prosecutor, we cannot say that even if that instruction had been given

---

justice for three quarters of a million people that reside in Suffolk County, and they also are entitled to justice at your hands." Compare *Commonwealth* v. *Belton*, 352 Mass. 263, 270 (1967); *Commonwealth* v. *Hoffer*, 375 Mass. 369, 379-380 (1978). See also Flanagan, Conduct of the Prosecutor 58-60 (1979). This impermissibly posed the issue as between the defendant and the community. But that is a false issue. The only issue is whether on the facts presented the defendant committed the crime.

[9] At the conclusion of the evidence the judge stated to the jury "that anything that happens after this is not evidence in this case. There will be arguments, of course, that follow, and tomorrow morning I will charge you on the law." This general instruction was, in our view, incapable of clearly indicating to the jury that argument of counsel is not evidence. In fact, it could be argued that the judge may have conveyed the impression to the jury that it was within their judgment whether to accept argument by counsel as evidence when he stated in his charge "it's your recollection that governs, and you may reject any suggestion or accept certain evidence to be true if the only one to suggest it is either counsel or myself, because it's your recollection."

that it would have cured the cumulative effect of the improper and highly prejudicial argument. See *Commonwealth* v. *Redmond*, 370 Mass. at 597. See also *Commonwealth* v. *Burke*, 373 Mass. at 576.

We note in passing that the trial judge was prompted to admonish both counsel repeatedly during the course of the trial and during closing arguments.[10] However, transgressions of this nature do not balance out. Improper prosecutorial argument can be neither justified nor excused because defense counsel also has overstepped permissible bounds.[11] See *Commonwealth* v. *McColl*, 375 Mass. 316, 325 (1978). Although there will be times when spontaneity by the prosecutor is necessary in order to counter the argument of defense counsel, prosecutors should remember that courts "have given limited tolerance to the principle of 'fight fire with fire.'" *Id.* "[B]y far the better course is for the prosecutor to seek redress from the court." *Id.* *Commonwealth* v. *Earltop, supra.* See generally Flanagan, Conduct of the Prosecutor 65-70 (1979). Initially, it is the defendant who bears the burden of counsel's transgressions

---

[10] We would be remiss in our duty if we did not point out the disgraceful and unprofessional closing argument of defense counsel (who is not counsel on appeal). It is extreme understatement to say that defense counsel did not assist "the process of reasoned jury deliberation by the excesses in which [he] indulged." *Commonwealth* v. *McColl*, 375 Mass. 316, 325 (1978). Not only did defense counsel stray from the evidence or any reasonable inferences therefrom, but he intentionally attempted to confuse the jury by referring to events (i.e., nonexistent grand jury proceedings) that he knew had never occurred, and could not possibly have occurred in the manner he suggested. See S.J.C. Rule 3:22A, DF 1, 377 Mass. 927 (1979). This was a blatant attempt by defense counsel to communicate misleading and unfounded impressions by innuendo. Cf. *Commonwealth* v. *White*, 367 Mass. 280, 284 (1975). The judge accurately described that aspect of his closing argument as "extremely improper." See I ABA Standards for Criminal Justice, Defense Function § 4-7.8(a) (1980) ("It is unprofessional conduct for a lawyer intentionally . . . to mislead the jury as to the inferences it may draw").

[11] Prosecutors as well as defense counsel are advised to devote some preliminary thought to closing argument. See in this regard *Commonwealth* v. *Haas*, 373 Mass. 545, 557 n.11 (1977), and *Commonwealth* v. *Earltop*, 372 Mass. at 206.

and ultimately the public who bears the additional and unnecessary expense of a new trial when those transgressions constitute prejudicial error and we are forced, as we are here, to reverse the judgments and remand the case for a new trial.[12]

3. *Motive evidence.* The victim, Hood, testified that on the night before the attempt on his life, he attempted to "flim-flam" an alleged "bookie," one Marty Donlon, outside of Sonny and Whitey's Tavern where he (Hood) and a friend, Steve Driscoll, had been drinking. The defendant objected to this testimony as immaterial to the matter being tried. The prosecution contended that this evidence went to the issue of motive: that Hogan was hired to kill Hood in retaliation for his attempted flim-flam.

"[I]f there is evidence of motive, that evidence is admissible." *Commonwealth* v. *Borodine,* 371 Mass. 1, 8 (1976), cert. denied, 429 U.S. 1049 (1977). Evidence of motive may aid the jury in reaching a verdict by giving them the complete picture. See *Commonwealth* v. *Durkin,* 257 Mass. 426, 428 (1926); *Commonwealth* v. *Brown,* 376 Mass. 156, 164 (1978), and cases cited. "There is no requirement that [such] evidence be conclusive in order to be admissible." *Commonwealth* v. *St. Germain,* 383 Mass. 256, 271 (1980). Resolution of the question whether evidence of motive is more probative than prejudicial lies within the sound discretion of the trial judge. *Id.* The judge allowed the motive evidence in de bene because he had reservations as to its relevance. The prosecutor, stating that he would "tie it all up a piece at a time," assured the judge he would prove Marty Donlon was a bookie and that he would establish a connection between the aborted "flim-flam," Hogan and the victim of the shooting.[13]

---

[12] The cautionary language of the Supreme Judicial Court in *Commonwealth* v. *O'Brien,* 377 Mass. at 778, could not be more prophetic than in the present circumstances where by the prosecutor's own words the costs associated with the trial of this matter were "in excess of a hundred thousand dollars."

[13] In pursuit of these efforts the prosecutor repeatedly asked apparently unfounded questions concerning a Pat Linsky and a Sabitino Fondanova.

As mentioned earlier, the "tie" of Donlon to the defendant was not very firm. The prosecutor's evidence consisted of testimony that Hogan and Donlon frequented the same bar. To that the judge replied, "I'm sure a lot of other people did." A police officer also testified that he had seen Donlon in the variety store operated by Hogan while Hogan was present; however, the officer could not recall what year he had seen this happen. Hood had asserted, however, that Donlon, a man he saw but did not know, had money and slips of paper in his hand. From this observation, he concluded that Donlon was a bookie.

While we fully recognize the "breadth of discretion allowed a judge in admitting penumbral evidence especially where motive . . . [is] in issue," *Commonwealth* v. *Alicea,* 376 Mass. 506, 522 (1978), and this opinion should be interpreted in no way to limit that discretion at retrial, the Commonwealth should take care to ensure that it presents evidence which rationally links the actors (to the defendant or the victim) and at least "suggests" a motive for the crime.[14] *Commonwealth* v. *St. Germain, supra* at 271. See *Commonwealth* v. *Durkin,* 257 Mass. at 427-428.

4. *Security measures.* Although we do not rest on this point for our decision, we note that the security measures used to bring Hood into the courtroom may also have been prejudicial to the defendant. Hood, the victim and chief

---

The government's motive for pursuing this line of questioning throughout the trial remains a mystery. No evidence was introduced concerning these two men. The prosecutor would simply ask various defense witnesses if he knew either of these men. At one point during the trial, in response to an objection by defense counsel, the judge asked the prosecutor did he intend to establish by these questions that Linsky was the other assailant. The prosecutor replied that "I personally don't know, Your Honor, to be fair to the Court."

This is an additional example of trial tactics of the prosecutor which tended "to create a serious danger of prejudice against the defendant." *Commonwealth* v. *Redmond,* 370 Mass. at 597.

[14] It should be apparent that failure to establish a link between Donlon and the defendant makes the reference to a "hit-man" an even more egregious error.

Commonwealth witness, was escorted into the courtroom and to the witness stand by two law enforcement officials in plain clothes. The law is settled that when the use of unusual security measures is indicated, the judge must balance the need for special restraints with considerations of maintenance of impartiality and proper decorum, and "place on the record all the circumstances affecting his decision." *Commonwealth* v. *DeVasto,* 7 Mass. App. Ct. 363, 366 (1979). Cf. *Commonwealth* v. *Brown,* 364 Mass. 471, 479 (1973); *Commonwealth* v. *Curry,* 368 Mass. 195, 201 (1975). Notwithstanding the somewhat ambiguous nature of the presence of the officers, the possible prejudice to the defendant is obvious.[15] A review of the record indicates that the judge played no part at all in the decision to have Hood escorted into the courtroom by two policemen. See and compare *Commonwealth* v. *Brown, supra* at 479 n.18. Nor does the record reflect whether this occurred again after the first day of trial. If such measures are contemplated on retrial and no agreement can be reached between counsel, it is incumbent on the Commonwealth to inform the trial judge in advance why they are necessary so that the judge can rule on the matter following the guidelines of *Brown.*

5. *Exclusion of testimony by correction official.* The defendant sought to impeach Hood by introducing, through a Department of Correction official, prison records allegedly describing homosexual behavior on Hood's part. This was an effort by the defendant to refute Hood's denial that he is a homosexual, and to resolve conflicting testimony of Hood and one Louis Royce as to the events preceding the shooting. The trial judge acted well within his discretion in refusing to admit this collateral evidence. See *Commonwealth* v.

---

[15] What is required (and why) in these circumstances should come as no surprise eight years after the decision in *Commonwealth* v. *Brown,* 364 Mass. 471 (1973). "Fair trial by an impartial jury is not denied when the relevant factors are weighed to a sensible conclusion that safeguards are needed which, in the circumstances of the content and conduct of the case, will not bring the rationality of the process or its decorum below an acceptable level." *Id.* at 476.

*Doherty*, 353 Mass. 197, 213-214, cert. denied, 390 U.S. 982 (1967).  Compare *Commonwealth* v. *Pettijohn*, 373 Mass. 26, 30 (1977).

*Judgments reversed.*

*Verdicts set aside.*