COMMONWEALTH *vs.* ALLAN B. HOPPIN.

Middlesex. October 14, 1981. — January 11, 1982.

Present: GREANEY, PERRETTA, & KASS, JJ.

*Practice, Criminal*, Argument by prosecutor, Conduct of prosecutor, Mistrial, Trial of indictments together.

A prosecutor's misconduct during closing argument at the trial of indictments for rape and other serious crimes, in displaying to the jury a piece of rawhide not part of the evidence, was, in the circumstances, properly remedied by the judge's curative instructions delivered the morning following the objectionable incident and did not require allowance of the defendant's motion for a mistrial. [38-41]

No abuse of discretion appeared in the denial of a defendant's motion to sever the trial of indictments respecting the unlawful possession of a firearm, ammunition, and marijuana and an indictment respecting receipt of stolen property from the trial of other indictments respecting sexual offenses, where the evidence on the indictments sought to be severed either was not extraneous to the principal charge or was unlikely to inflame the jury. [41-43].

INDICTMENTS found and returned in the Superior Court Department on September 11, 1979.

The cases were tried before *Sullivan, J.*

*William J. Leahy (John M. Garvey* with him) for the defendant.

*Robert M. Raciti*, Assistant District Attorney, for the Commonwealth.

KASS, J. There is no attempt by the Commonwealth to deny that the prosecutor, who is not counsel on this appeal, engaged in egregiously improper conduct during the closing argument. The question is: Did it matter?

Trial was before a jury and the defendant was convicted of rape, committing unnatural acts, assault and battery by means of a dangerous weapon, kidnapping, unlawful possession of a firearm, unlawful possession of marijuana, and

receiving stolen goods. On appeal, the major issue related to the charge of rape. The victim had testified that the defendant had tied her wrists together with a "leather thong" and, after brutalizing her with fist and knife, had forced her, while blindfolded, to perform fellatio. Then, the victim's account continued, the defendant gagged her, engaged in vaginal intercourse and attempted anal intercourse.

It is not necessary to rehearse in detail the bizarre and sordid events which preceded this violent encounter. But in order to measure the effect of the prosecutor's transgression it is well to summarize what the jury might have believed from the evidence. The defendant and the victim had known each other for some time. Although the defendant wished for an amorous relationship, the victim "just wanted to be friends." She was relatively fresh from a liaison with one Jacobson, which had ended badly. In dwelling upon her bitterness toward Jacobson, the victim expressed to the defendant her wish to see Jacobson dead. On July 4, 1979, the defendant, on the pretext of needing to share news of "something terrible," arranged to meet the victim and drove her to the trailer in which he lived. There he recounted a tale of having killed a woman and two men, one the despised Jacobson. For this he claimed a carnal reward which the victim declined to give, whereupon the defendant overpowered her.

After the sexual episode, the defendant released the victim's bonds and slept. The victim dressed and stole away. She tried to call a friend and, finding him absent, related the incident to the friend's roommate. The next morning the victim asked for help at the Brookline Family Counseling Service and later that day went to Beth Israel Hospital for a physical examination. Dr. Michael Alper, the examining physician, testified that he observed on the victim a black eye, a bruise on the chin, lacerations of the face and wrists and tenderness in the neck muscles. The victim did not report to the police that she had been raped until July 24, 1979.

Largely through attacks by cross-examination on the credibility of the victim, the defense advanced the theory that the rape was an invention, fabricated by the victim as vengeance against the defendant for deceiving her with a tall tale. Indeed, the defendant's story of multiple homicide did, in fact, turn out to be fiction. Jacobson was very much alive.

During his summation, the prosecutor wrapped a piece of rawhide around his hand, held it for a considerable time and threw it on his desk for emphasis. At no time had the rawhide been introduced — or even offered — as evidence. So far as appears the rawhide was a stage prop entirely of the prosecutor's devising. Twice defense counsel attempted to object, but the rawhide was outside the trial judge's field of view. As nothing seemed untoward about what the prosecutor was saying, the judge fended off the objections and only after the jury had been excused for the day were the prosecutor's theatrics brought home to the judge by a defense motion for a mistrial. This came as an unpleasant surprise. The judge had taken particular care to warn both counsel before final arguments that they should think about their closings and that they should steer clear of the excesses which have been the subject of so much judicial comment.[1] *Commonwealth* v. *Redmond,* 370 Mass. 591, 597 (1976). *Commonwealth* v. *Killelea,* 370 Mass. 638, 648 (1976). *Commonwealth* v. *Borodine,* 371 Mass. 1, 11-12 (1976), cert. denied, 429 U.S. 1049 (1977). *Commonwealth* v. *Earltop,* 372 Mass. 199, 204-207 (1977) (Hennessey, C.J., concurring). *Commonwealth* v. *Burke,* 373 Mass. 569, 575-577 (1977). *Commonwealth* v. *Cepulonis,* 7 Mass. App. Ct. 646, 650 (1979). *Commonwealth* v. *Grammo,* 8 Mass. App. Ct. 447, 457-458 (1979). *Commonwealth* v. *Hogan,* 12 Mass. App. Ct. 646, 651-654 (1981).

---

[1] The prosecutor's lapse seems to have been a failure of judgment, rather than forethought. He had obviously thought in advance that the rawhide — which he had to obtain on his own — would be a splendid forensic device. He also paraded before the jury his daughter's little tooth pillow to dramatize an argument that if the jury believed defense counsel's theory of what happened it would be like believing in the tooth fairy.

The judge decided to sleep on the motion for a mistrial and announced, when court resumed the next morning, that he would deny it and would comment on the prosecutor's error in his charge to the jury. This he did as follows:

> "Briefly, it was brought to my attention that the prosecutor in this case during the course of a portion of his argument had with him in his hands a rope of some kind, visibly, apparently made out of leather. Now, that was not in evidence, and I instruct you to disregard the fact that he had it in his hand. It would not be proper for you not to do so. What he is allowed to do is to argue the evidence and the fair inferences. He can talk about the evidence with respect to what the witness said happened. He can talk [*sic*] what the doctor observed and what other people observed and what the doctor's observations were on the wrists, and so forth and so on. But he may not bring before you matters which are not in evidence, and that was inappropriate and it should have no influence on you and should be disregarded by you, and I know that as fair and impartial jurors you will be able to do so, because you must decide the case based solely on the evidence that you have heard."

Our task is to decide whether this morning after cure sufficiently neutralized the prosecutor's misconduct. That misconduct was different from the usual sailing too close to the wind; rather the prosecutor seems to have deliberately run himself aground. It evokes the remark of Boulay de la Muerthe, "It is worse than a crime, it is a blunder."[2] In view of that circumstance, we have fixed our attention entirely on the materiality of the prejudice which might have flowed from the rawhide demonstration. We do not think it necessary to reverse merely to maintain the teeth of the

[2] Bartlett, Familiar Quotations 415 (15th ed. 1980).

voluminous body of cases to which we have already referred. Compare the concurring opinion of Hennessey, C.J., in *Commonwealth* v. *Earltop*, 372 Mass. at 204-207. Misconduct so apparently the consequence of inexperience is not likely to recur in the same way.

If the jury found the victim credible — and obviously they did — they had to believe that she had been threatened, bound, blindfolded, beaten and subjected to a series of sexual depredations. There was testimony from witnesses other than the victim that she was in a lacerated and bruised condition on the day after the rape was said to have occurred. While the display of the rawhide could have little purpose other than to inflame the jury, *Commonwealth* v. *Shelley*, 374 Mass. 466, 470 (1978), the jury had heard competent evidence which itself was so emotionally charged that the rawhide was weak beer by comparison. Nor was it so compelling or dramatic as a knife, which came into evidence and went to the jury room. The tying of the victim's wrists was far from the heart of the Commonwealth's case nor related to the core of the defense. Compare *Commonwealth* v. *Shelley*, 374 Mass. at 471 (improper discrediting of defense experts by argument of matter not in evidence); *State* v. *Scarlett*, 118 N.H. 904, 905-906 (1978) (flourishing blood stained bedspread not in evidence to establish link with child molester); *Commonwealth* v. *Hogan*, 12 Mass. App. Ct. at 650 (labeling defendant as a "hitman").

The tangential character of the prosecutor's misconduct bears on our evaluation of an argument which the defense has ably and forcefully made: that the impact of the rawhide was allowed to fester overnight in the jurors' minds and that consequently the curative instruction was too little and too late. Prompt and forceful instructions are, of course, better than delayed ones. *Commonwealth* v. *Hawley*, 380 Mass. 70, 85 (1980). *Commonwealth* v. *Bailey*, 12 Mass. App. Ct. 104, 108 (1981). Nevertheless, we incline to the conclusion that the jurors would not have slighted the judge's "strong and precise instructions . . . ." *Commonwealth* v. *Gordon*, 356 Mass. 598, 604 (1970). Contrast

*Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 9-10 (1980). An instruction, as here, that something displayed was never in evidence and has no place in the case is more likely to be effective than asking a jury to disregard testimony which has been blurted out. See, e.g., *Gartland* v. *Freeman*, 277 Mass. 520, 522-523 (1931). Compare *Commonwealth* v. *Killelea*, 370 Mass. at 648-649, in which the judge did not emphasize the particulars in which the prosecutor's argument had been improper. On balance we think this is a case where it was proper, in the judge's discretion, to rely on curative instructions in denying the defense motion for a mistrial. *Commonwealth* v. *Gouveia*, 371 Mass. 566, 572 (1976). This is particularly so where the improper conduct was confined to a detail which, in context, was something of an appendage. See *Commonwealth* v. *Nordstrom*, 364 Mass. 310, 316 (1973).

We turn next to a second ground of appeal: that the stolen property charge should have been severed from the sexual assault charges. On January 8, 1980, a Tuesday, the defense presented motions to suppress, among other things, a gun, ammunition, a knife, and marijuana which the police had seized in the trailer where the defendant lived. Up to that point, and on that occasion, the defendant had been represented by a lawyer from the Massachusetts Defenders Committee. Following the suppression hearing there was discussion among counsel and the judge about scheduling a trial. During that conference the Commonwealth made clear that it proposed to try the rape and rape-related indictments together with indictments charging unlawful possession of a firearm and ammunition, receiving stolen goods, and unlawful possession of marijuana. The judge inquired if there had been or was to be a motion to sever any of the indictments. He was informed by the prosecutor that no such motion had been made, and defense counsel said nothing in contradiction. The judge ordered trial to commence the following Monday.

On that day, January 14, 1980, the lawyer who had represented the defendant said his client was considering reten-

tion of private counsel. Thereupon the judge set the case down for trial on January 23, 1980. On January 23, new counsel entered his appearance and presented a motion to sever the indictments respecting unlawful possession of a firearm, ammunition, and marijuana and the indictment respecting receiving stolen property. No supporting affidavit setting forth the grounds upon which the alleged prejudice rests accompanied the motion to sever, as required by Mass.R.Crim.P. 9(d)(2), 378 Mass. 860 (1979). After hearing argument, the judge denied the motion.

Whether to sever indictments for trial is within the discretion of the trial judge. *Commonwealth* v. *Cruz*, 373 Mass. 676, 690-691 (1977). *Commonwealth* v. *Kenneally*, 10 Mass. App. Ct. 162, 180 (1980). See Mass.R.Crim.P. 9(d)(1), 378 Mass. 860 (1979), and Reporters' Notes to Subdivision (d). "The protection of defendants' rights . . ., while of paramount importance, cannot be considered without reference to the orderly transaction of judicial business . . . The judge had to consider . . . the cost to the public of a multiplicity of trials." *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 223 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972), quoting *Barber* v. *Commonwealth*, 353 Mass. 236, 240 (1967). Some weight, therefore, is due the eleventh hour nature of the motion to sever in this case.

If, however, evidence relating to the four indictments the defendant sought to sever would have been irrelevant to the rape-related charges and would materially have prejudiced his defense, the motion to sever should have been allowed. *Commonwealth* v. *Blow*, 362 Mass. 196, 200-201 (1972). *Commonwealth* v. *Gallison*, 383 Mass. 659, 672 (1981). Little prejudice would have seeped into the case from the possession of marijuana indictment. It is an offense that registers on the low end of the scale of gravity and was not likely to inflame the jury. The ammunition and the handgun had some relation — if distant — to the yarn of gunshot murder in Maine. That the handgun was stolen teeters on

the edge.   Compare *Commonwealth* v. *Blow*, 362 Mass. at 200-201, in which indictments for robbery and breaking and entering at separate times and places (although on the same day) were held improperly joined.   However, the fact that the gun was stolen was related to evidence properly in the case, and, to that degree, was not entirely extraneous to the main charge.   Unlike *Blow*, it was here not likely "that the jury were influenced by the accumulating effect of evidence as to the separate offenses." *Id.* at 201.   There was a thread, albeit slender, of connection among the criminal episodes.   Mass.R.Crim.P. 9(a) (1), 378 Mass. 859 (1979).

*Judgments affirmed.*